1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   ROGER GIFFORD,                          No.  2:17-CV-2421-TLN-DMC

12                    Plaintiff,

13        v.                                  <u>FINDINGS AND RECOMMENDATIONS</u>

14   PETER KAMPA, et al.,

15                    Defendants.

16

17          Plaintiff, who is proceeding pro se, brings this civil action.  Pending before the

18   court are the following motions:

19          ECF No. 24    Defendant Winston's motion to dismiss.

20          ECF No. 25    Defendant Winston's motion to strike.

21          ECF No. 26    Hornbrook Community Services District (HCSD) Defendants'
                          amended motion to dismiss.
22
            ECF No. 39    Defendant Winston's motion to revoke Plaintiff's in forma
23                        pauperis status, declare Plaintiff a vexatious litigant, require
                          Plaintiff to post security.
24

25   The HCSD Defendants' motion is brought on behalf of: The HCSD, Peter Kampa, Robert

26   Puckett, Sr., Melissa Tulledo, Julie Bowles, Clint Dingman, and Ernest Goff.  <u>See</u> ECF No. 26,

27   pg. 1.  Plaintiff filed various responses on July 12, 2019.  <u>See</u> ECF Nos. 42-47.

28   / / /

                                              1

1

# I.  PLAINTIFF'S ALLEGATIONS

2        This action proceeds on plaintiff's first amended complaint.  See ECF No. 17.

3 Plaintiff alleges his claims arise under the First, Fourth, and Fourteenth Amendments to the

4 United States Constitution, as well as various federal statutes, including the Clean Water Act

5 and the Safe Drinking Water Act.  See id. at 1.  Plaintiff also alleges various state law claims.

6 See id.

7        The following are named as defendants:

8              Peter Kampa

9              Robert Puckett, Sr.

10             Patricia Slote[1]

11             Melissa Tulledo

12             Robert Winston

13             Julie Bowles

14             Clint Dingman

15             Ernest Goff

16             Kevin Dixon[2]

17             The Hornbrook Community Services District (HCSD)

18             The Hornbrook Community Bible Church (HCBC)[3]

19             Steven Crittenden[4]

20             Duke Martin[5]

21             James Soares[6]

22             See id.

23 / / /

24 / / /

25

---

26  [1]   Default entered on May 23, 2019.  See ECF No. 30.
    [2]   Default entered on May 23, 2019.  See ECF No. 29.

27  [3]   Default entered on May 23, 2019.  See ECF No. 33.
    [4]   Default entered on May 23, 2019.  See ECF No. 31.

28  [5]   Default entered on May 23, 2019.  See ECF No. 32.
    [6]   Default entered on May 23, 2019.  See ECF No. 34.

Plaintiff collectively refers to Defendants Puckett, Tulledo, and Slote, who are alleged to be former members of the board of directors of Defendant HCSD, as the "Board Defendants."  Id. at 3.  Plaintiff collectively refers to Defendants Bowles, Dingman, Winston, Goff, Kampa, and Dixon, who are alleged to be employees and/or contractors of Defendant HCSD, as the "employee and contractor Defendants."  ECF No. 17, pg. 3.  According to Plaintiff: "The 'Board Defendants' took wrongful actions in their official capacities as public officials and officers, and/or under color of law of their positions, and also failed to properly supervise, train, and/or control, the HCSD employee and contractor Defendants. . . ."  Id.

**A.**     **Allegations as to Each Defendant**

Plaintiff does not outline any specific allegations as against defendant Tulledo, who is alleged to be among the "Board Defendants."  Defaults have been entered as to Defendants Dixon, Slote, Crittenden, Martin, Soares, and the Hornbrook Community Bible Church.  See ECF Nos. 29-34; but see ECF No. 62 (return of process as to defendant Soares, filed on February 3, 2020).  Plaintiff has filed motions for default judgments.  See ECF Nos. 65 and 66.  Plaintiff's allegations as to these defendants are not before the Court and are not summarized here.

Defendant Robert Puckett, Sr.

Plaintiff alleges Defendant Puckett was the president of the HCSD board and initiated the "common plan" which was ratified by Defendants Tulledo, Winston, Kampa, Dingman, Goff, and Dixon.  ECF No. 17, pg. 6.  According to Plaintiff, this "common plan" was adopted to allow for operation of the HCSD in an "unsafe manner which failed to comply with Federal, State, and Local laws; and to create, institute, and enforce policies, customs, and practices, all in violation of Federal, State, and local laws. . . ."  Id.

Plaintiff claims Defendant Puckett's conduct resulted in undercharging and waiving fees and charges for certain customers, failing to impose and collect the "standby fee" as to each parcel, and failing to comply with provisions of the California Water Code.  Id.  Plaintiff also claims Defendant Puckett conspired with Defendant Winston to "approve Winston's intervention in several HCSD administrative matters, and/or Siskiyou County

1    Superior Court matters being prosecuted by Plaintiff and other persons, as well as matters in

2    the Third District Court of Appeals, without any BOD [board of directors] approval prior to

3    Winston's appearing therein." Id. at 6-7.  Plaintiff alleges these appearances violated

4    provisions of the California Business and Professions Code.  See id. at 7.

5              Finally, Plaintiff outlines a number of allegations of further wrongdoing on the

6    part of Defendant Puckett, including:  an unpermitted and improperly altered septic system;

7    derelict vehicles leaking toxic oils and fluids onto the ground and public streets, rivers, and

8    creeks; decrepit sheds, lean-tos, outbuildings, trailers, fifth wheels, "and the like in a manner

9    harboring rodents and vermin"; improperly stored pesticides, rodenticides, and fungicides in

10   trailers in which Defendant Puckett permits people to live; maintaining a fire hazard in the

11   form of an improperly modified residential electrical system; and maintaining large amounts of

12   debris.  Id. at 7-8.

13             Defendant Hornbrook Community Services District

14             Plaintiff assigns liability to the HCSD based on the conduct of its officers and

15   directors.  See id. at 11-12.  Plaintiff contends Defendant HCSD "had inadequate facilities that

16   violate the federal Clean Water Act and Safe Drinking Water Act.  See id.  According to

17   Plaintiff, defendant HCSD is also liable for improperly waiving or reducing water fees for

18   friends.  See id.  Plaintiff also alleges violations of California's Brown Act.  See id. at 13-15.

19             Defendant Julie Bowles

20             Plaintiff claims Defendant Bowles was an officer and employee of Defendant

21   HCSD, serving as its treasurer.  See id. at 15.  According to Plaintiff: "No agreement exists to

22   indemnify Bowles pursuant to Govt. Code § 995 (or otherwise) in her contract with the HCSD."

23   Id.  Plaintiff alleges Defendant Bowles collaborated with other defendants in the "improper

24   conduct of illegally non- and/or improperly agendized, and/or non-public meetings by

25   improperly meeting with them individually and serially, as a group (or portions thereof) via

26   personal contact. . . . for the purpose of discussing official HCSD-related 'public business,'

27   including how HCSD funds would be (improperly) diverted to Winston, Bowles, and Dingman;

28   which HCSD customers should get (wrongfully) reduced and/or waived fees and charges and

4

1  how to alter the billing to affect and conceal those reductions and waivers; and, how to submit

2  time sheets and 'pay stubs' for Dingman that were in excess of his contracted rate of pay and

3  hours, and/or which contained false claims for hours and/or jobs worked (and how to prevent all

4  those documents, and the associated timesheets, from being revealed to Plaintiff, and the

5  public)."  Id.  Plaintiff further claims Defendant Bowles improperly diverted public funds to

6  friends and acquaintances.  See id.

7          Plaintiff alleges:

8              These accts by Bowles in the operation of the HCSD was part of the
            conspiracy with the Board Defendants to cause disruption and upset of the
9          operation of the HCSD, and of Plaintiff's position and duties as a Director
            and Secretary, and was undertaken in part as retaliation for Plaintiff's
10          complaints to the HCSD Board and government agencies about violation of
            law concerning the HCSD's operations, and Bowles' lack of competence.
11
          ECF No. 17, pgs. 15-16.
12

13          Finally, Plaintiff alleges Defendant Bowles submitted $2,250.00 worth of false

14  claims for payment for services for HCSD she did not perform.  See id. at 16.

15          Defendant Clint Dingman

16          Plaintiff alleges Defendant Dingman was the "Systems Trainee" and "Shift

17  Operator" for defendant HCSD's water production and treatment facilities.  See id.  According

18  to Plaintiff, Defendant Dingman lacked the certifications for this position required under state

19  law.  See id.  Plaintiff claims the Board Defendants, Kampa, Goff, and Dixon "conspired,

20  agreed, and acted to wrongfully provide compensation, benefits, indemnification, and/or other

21  pecuniary and/or non-pecuniary benefits to Dingman which were not contractually specified,

22  and/or which were granted outside of an agendized, public meeting of the Board of the

23  HCSD. . . ."  Id.  In particular, Plaintiff complains that other defendants allowed Defendant

24  Dingman "to reside, with his dog, at the HCSD water plant, while also utilizing that facility for

25  his personal purposes (including as a dog run – permitting the animal to defecate all over the

26  property without Dingman cleaning it up), to store belongings, etc – all without any payment

27  by Dingman for those uses."  Id.  Plaintiff further contends Defendant Dingman and other

28  defendants conspired to arrange for Defendant Dingman to receive payments for services he

1   did not actually perform.  See id. at 16-17.

2           Finally, Plaintiff alleges Defendant Dingman conspired with other defendants to

3   carry out the "common plan."  Id. at 17.  Under the heading "V. Defendant Robert Puckett,

4   Sr.," Plaintiff adds that the "Board Defendants, Kampa, Dingman, Goff, Dixon, and Winston"

5   acted to allow defendant Dingman to "work on, and operate (including by the addition of

6   chemicals to the water supply) the HCSD water production, treatment, and distribution

7   facilities without any certification, or license to do so," in violation of provisions

8   of the California Health and Safety Code.  Id. at 7.  Plaintiff adds:

9           . . .These same Defendants agreed, conspired, and acted to allow
            Dingman to occupy and utilize for his personal purposes, the water
10          production, treatment facilities, and real property of the HCSD free of
            charge, and without compensation for the costs incurred to the HCSD and
11          the public by his doing so."

12          Id.

13   Plaintiff further claims the Board Defendants conspired with Defendant Winston to

14   "wrongfully and corruptly have the HCSD divert public funds to Winston for former Board

15   member Michelle Hanson's private legal fees in Siskiyou County Superior Court cases. . . ."

16   Id.

17          Defendant Ernest Goff

18          According to Plaintiff, Defendants Goff and Dixon "represented themselves as

19   independent contractors, as the Chief Systems Operator(s) for the HCSD, as agents of the

20   HCSD and Board Defendants, and supervisors of Dingman."  Id. at 18.  Plaintiff claims that, in

21   these capacities, Defendant Goff and Dixon "had a duty to regularly inspect, oversee,

22   supervise, perform, and directly control the daily operations of the water treatment plant and

23   distribution system as provided by Federal and Sate law. . . ."  Id. (emphasis in original).

24   Plaintiff alleges Defendants Goff and Dixon are liable to him for failing to do so.  See ECF

25   No. 17, pg. 18.

26   / / /

27   / / /

28   / / /

6

1   Plaintiff further claims:

2
3   During the times material to this complaint, Goff and Dixon acted
    in concert with the Board Defendants, Bowles, and Dingman to extract
    improper payments from the HCSD, to create and distribute false public
    documents and reports to state enforcement agencies concerning the
4   operation of the HCSD, to operate the HCSD in a manner contrary to law
    and thus causing a nuisance *per se* to Plaintiff and the public, and to
5   wrongfully prevent inspections and oversight of the HCSD facilities.
    Goff and Dixon, despite their insistence as being classified "contractors"
6   to the HCSD, also wrongfully obtained indemnification, defense, and
    other expenses of public money from the HCSD to which they were not
7   entitles, and which were thus improper gifts of public funds.

8   Id. at 18-19.

9   Plaintiff alleges that the actions of Defendants Goff and Dixon were ratified by Slote, Puckett,

10  Kampa, and the HCSD.  See id. at 19.

11                      Defendant Peter Kampa

12  Plaintiff alleges Defendant Kampa was the General Manager of the HCSD and,

13  as such, was the direct supervisor of Dingman, Goff, and Dixon.  See id. at 20.  According to

14  Plaintiff, Defendant Kampa is liable because he "agreed, assisted, aided, and abetted Slote,

15  Puckett, Goff, Dixon, Dingman, and the HCSD in the common plan to create, file with the

16  State Water Board, and distribute, false public records, consisting of documents, logs, and

17  reports concerning the operation of the HCSD and its facilities."  Id.  Plaintiff additionally

18  claims:  "At no time has Kampa actually performed any of his General Manager duties within

19  the boundaries of the HCSD, instead simply ignoring those duties in favor of using the phone

20  to make calls to the HCSD Board meetings as well as *ex parte communications* via phone and

21  email to the individual Board members, Goff, Dixon, Dingman, and/or Winston in violation of

22  the Brown Act, and to plan and/or facilitate such violations by the other Defendants."  Id. at

23  20-21.

24                      Defendant Robert Winston

25  Plaintiff alleges that Defendant Winston is a private attorney who conspired

26  with other defendants, specifically the Board Defendants, to violate HCSD bylaws, the Brown

27  Act, as well as other provisions of California law.  See id. at 23.  Plaintiff further claims that

28  Winston engaged in unprofessional conduct, in violation of provisions of the California

                                    7

1  Business and Professions Code.  See id.  It appears that Plaintiff's claims against Winston stem

2  from Winston's work as counsel for the HCSD board of directors.  See id. at 23-25.  Plaintiff

3  adds:

4            Plaintiff only seeks monetary damages of any sort against Winston
       for his Federal and Constitutional claims.  Plaintiff seeks no personal
5      damages or benefit from this action as to Winston for any pendent State
       law or tort-based claims.
6
       ECF No. 17, pgs. 27-28 (emphasis in original).
7

8      **B.**     **Claims for Relief**

9            Plaintiff alleges the facts set forth in the amended complaint give rise to 14

10 federal claims and 25 state law claims.  See id. at 31-44.

11           1.     Federal Claims

12           Plaintiff asserts the following claims for relief (referred to as "Counts") under

13 federal law:

14           Count I      First Amendment – Violations of right to freedom of
                          speech and petition (against the Board Defendants, HCSD,
15                        Winston, Kampa, and Dingman).

16           Count II     42 U.S.C. § 1985 – Deprivation of right to vote (against the
                          Board Defendants, HCSD, and Kampa).
17
             Count III    33 U.S.C. § 1251, et seq., and 42 U.S.C. § 300f, et seq. –
18                        Violations of the Clean Water Act and Safe Drinking
                          Water Act (against the Board Defendants, HCSD, Goff,
19                        Dixon, and Kampa).

20           Count IV     Fifth and Fourteenth Amendments – Deprivation of due
                          process and equal protection (against the Board Defendants,
21                        HCSD, and Kampa).

22           Count V      Fifth and Fourteenth Amendments – Deprivation of due
                          process and equal protection (against the Board Defendants,
23                        Winston, Dixon, Goff, Kampa, and Dingman).

24           Count VI     Fifth and Fourteenth Amendments – Deprivation of due
                          Process, equal protection, and right to vote (against the Board
25                        Defendants, Bowles, Kampa, and Dingman).

26           Count VII    Fifth and Fourteenth Amendments – Deprivation of due
                          process and equal protection (against HCBC and Crittenden).
27
             Count VIII   Fifth and Fourteenth Amendments – Deprivation of due
28                        process and equal protection (against Dingman).

| | |
|---|---|
| Count IX | 33 U.S.C. § 1251, et seq. – Violation of Clean Water Act (against Puckett). |
| Count X | 42 U.S.C. § 300f, et seq. – Violation of Safe Drinking Water Act (against Puckett). |
| Count XI | 7 U.S.C. § 136, et seq. – Violation of the Insecticide, Fungicide, and Rodenticide Act (against Puckett). |
| Count XII | 18 U.S.C. § 1513(e) – Retaliation (against the Board Defendants and HCSD). |
| Count XIII | 42 U.S.C. § 1985 – Conspiracy (against the Board Defendants, HCSD, Bowles, Winston, and Dingman). |
| Count XIV | First, Fifth, and Fourteenth Amendments – Retaliation and violation of due process and equal protection. |

See ECF No. 17, pgs. 31-37.

    2.    <u>State Law Claims</u>

Plaintiff asserts the following claims for relief (again, referred to ac "Counts") under California law:[7]

| | |
|---|---|
| Count I | Violations of HCSD bylaws (against the Board Defendants, Bowles, Dingman, Kampa, Dixon, Goff, and Winston). |
| Count II | Willful negligence (against all defendants). |
| Count III | Nuisance (against Puckett). |
| Count IV | California Gov't Code § 1090 – self dealing (against the Board Defendants, Winston, Bowles, Dingman, Goff, and Dixon). |
| Count V | Retaliation (against the Board Defendants, HCSD, and Kampa). |
| Count VI | Gifts of public funds (against HCBC and Crittenden). |
| Count VIII[8] | Gifts of public funds, false claims, and fraud (against Dingman). |
| Count IX | Gifts of public funds (against Bowles and Goff). |
| Count X | Gifts of public funds (against Doe defendants). |
| Count XI | Article 1, section 2, California Constitution – violation of right to free speech (against the Board Defendants, Winston, Bowles, and Dingman). |

---

[7]    Though plaintiff states that he is not seeking relief against Winston based on any state law claims, plaintiff nonetheless asserts state law claims as against Winston.

[8]    The amended complaint contains no state law Count VII.

9

| | | |
|---|---|---|
| Count XII | Unfair business practices (against the Board Defendants and Bowles). | |
| Count XIII | Unfair business practices (against the Board Defendants, Dixon, and Goff). | |
| Count XIV | False claims (against Winston). | |
| Count XV | Negligence (against the Board Defendants, Kampa, Goff, Dixon, Bowles, Dingman, and Winston). | |
| Count XVI | Unfair business practices (against the Board Defendants, Kampa, Dingman, Bowles, Crittenden, and HCBC). | |
| Count XVII | Civil conspiracy (against the Board Defendants, Winston, Dingman, Goff, and Bowles). | |
| Count XVIII | Willful and/or negligence infliction of emotional distress (against the Board Defendants, Goff, Winston, Bowles, Kampa, and Dingman). | |
| Count XIX | California Public Records Act (against the Board Defendants, HCSD, and Kampa). | |
| Count XX | Nuisance (against the Board Defendants, Dingman, Goff, Dixon, and Kampa). | |
| Count XXI | Breach of covenant of good faith and fair dealing against the Board Defendants, HCSD, and Kampa). | |
| Count XXII | Void official acts (against the Board Defendants). | |
| Count XXIII | Gifts of public funds (against the Board Defendants, Kampa, Dingman, and Bowles). | |
| Count XXIV | Gifts of public funds (against the Board Defendants, Martin, Bowles, and Soares). | |
| Count XXV | Waste of public funds (against the Board Defendants and HCSD). | |
| Count XXVI | Punitive damages (against all defendants). | |

See ECF No. 17, pgs. 37-44.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## II.  SUMMARY OF DEFENDANTS' ARGUMENTS

### A.    Defendant Winston

In his motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Defendant Winston argues: (1) Plaintiff's federal claims against him must all be dismissed because Plaintiff admits defendant Winston is a private actor; (2) Plaintiff's federal claims are barred by the Noerr-Pennington doctrine; (3) Plaintiff's due process and equal protection claims must be dismissed; (4) Plaintiff fails to allege sufficient facts to sustain a First Amendment claim; (5) California's litigation privilege bars Plaintiff's state law claims; and (6) Plaintiff's state law conspiracy claims are barred by California Civil Code § 1714.10.  See ECF No. 24-1 (points and authorities in support of Defendant Winston's motion to dismiss).

Defendant Winston separately moves to strike Plaintiff's state law claims under California Code of Civil Procedure § 425.16, California's statute barring strategic litigation against public participation (anti-SLAPP statute).  See ECF No. 25-1 (points and authorities in support of Defendant Winston's motion to strike).  Defendant Winston also separately moves to revoke Plaintiff's in forma pauperis status pursuant to 28 U.S.C. § 1915(e)(2) and enter a vexatious litigant order against Plaintiff pursuant to 28 U.S.C. § 1651(a).  See ECF No. 39-1 (points and authorities in support of Defendant Winston's motion to revoke).

### B.    The HCSD Defendants

In their amended motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the HCSD Defendants argue: (1) Plaintiff cannot bring an action directly under the Constitution; (2) Plaintiff cannot state a claim for violation of the First Amendment; (3) Plaintiff cannot establish a claim for violation of procedural due process; (4) Plaintiff cannot establish an equal protection violation; (5) Plaintiff's claims based on gifts of public funds fail as a matter of law because Plaintiff alleges no facts to establish the disbursements were not rationally related to a public purpose; (6) Plaintiff has alleged no facts to establish a violation of his right to vote; and (7) Plaintiff's federal statutory claims fail because he has not alleged that he suffered an injury in fact.  See ECF No. 26.

/ / /

11

1    The HCSD Defendants also argue Plaintiff's state law claims are deficient

2  because: (1) Plaintiff's state law claims fail because the HCSD Defendants are immune;

3  (2) Plaintiff has not alleged defendants were negligent;   (3) Plaintiff has failed to plead

4  sufficient facts to show a nuisance; (4) Plaintiff has alleged no facts showing impermissible

5  self-dealing; (5) Plaintiff cannot establish retaliation because he was not an employee;

6  (6) Plaintiff's claim based on alleged gifts fail as a matter of law; and (7) Plaintiff's claims for

7  intentional and negligent infliction of emotional distress fail as a matter of law.  See ECF No.

8  26.

9

10                    **III.  STANDARDS FOR MOTION TO DISMISS**

11    In considering a motion to dismiss under Rule 12(b)(6), the Court must accept all

12  allegations of material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94

13  (2007).  The Court must also construe the alleged facts in the light most favorable to the plaintiff.

14  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp.

15  Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per

16  curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v.

17  McKeithen, 395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by

18  actual factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50

19  (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by

20  lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

21    Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

22  of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair

23  notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp v. Twombly,

24  550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order

25  to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain

26  more than "a formulaic recitation of the elements of a cause of action;" it must contain factual

27  allegations sufficient "to raise a right to relief above the speculative level."  Id. at 555-56.  The

28  complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Id.  at

                                        12

570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## IV. DISCUSSION

In this case, Plaintiff purports to raise a constellation of both federal and state law claims. Collectively, Defendants argue Plaintiff's federal claims must be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants also collectively argue Plaintiff's various state law claims fail. Finally, Defendant Winston seeks an order revoking Plaintiff's in forma pauperis status in this case, declaring him a vexatious litigant, and requiring Plaintiff to post security before proceeding.

/ / /

1

    **A.**    **Federal Claims**

2

        As to Plaintiff's federal claims against him, Defendant Winston raises the

3

following contentions: (1) Plaintiff's federal claims must be all dismissed because Plaintiff

4

admits Defendant Winston is a private actor; (2) Plaintiff's federal claims are barred by the

5

Noerr-Pennington doctrine; (3) Plaintiff's due process and equal protection claims must be

6

dismissed; and (4) Plaintiff fails to allege sufficient facts to sustain a First Amendment claim.[9]

7

        The HCSD Defendants separately argue Plaintiff's federal claims fail for the

8

following reasons: (1) Plaintiff cannot bring an action directly under the Constitution;

9

(2) Plaintiff cannot state a claim for violation of the First Amendment; (3) Plaintiff cannot

10

establish a claim for violation of procedural due process; (4) Plaintiff cannot establish an equal

11

protection violation; (5) Plaintiff's claims based on gifts of public funds fail as a matter of law

12

because Plaintiff alleges no facts to establish the disbursements were not rationally related to a

13

public purpose; (6) Plaintiff has alleged no facts to establish a violation of his right to vote;

14

and (7) Plaintiff's federal statutory claims fail because he has not alleged that he suffered an

15

injury in fact.

16

        1.    Liability of Private Actors

17

        "Traditionally, the requirements for relief under [§] 1983 have been articulated

18

as: (1) a violation of rights protected by the Constitution or created by federal statute, (2)

19

proximately caused (3) by conduct of a 'person' (4) acting under color of state law." Crumpton

20

v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). Or, more simply, courts have required plaintiffs

21

to "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights

22

secured by the Constitution or federal statutes." Gibson v. United States, 781 F.2d 1334, 1338

23

(9th Cir. 1986); see also Pistor v. Garcia, 791 F. 3d 1104, 1114 (9th Cir. 2015); Long v. Cty. of

24

Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); WMX Techs., Inc. v. Miller, 197 F.3d 367,

25

372 (9th Cir. 1999) (en banc); Ortez v. Wash. Cty., Or., 88 F.3d 804, 810 (9th Cir. 1996).

26

/ / /

27

28

_____

[9]    Defendant Winston also contends Plaintiff's current action is barred by the doctrine against claim splitting.

The question of whether a person who has allegedly caused a constitutional injury was acting under color of state law is a factual determination. See Brunette v. Humane Soc'y of Ventura Cty., 294 F.3d 1205, 1209 (9th Cir. 2002); Gritchen v. Collier, 254 F.3d 807, 813 (9th Cir. 2001); Lopez v. Dep't of Health Servs., 939 F.2d 881, 883 (9th Cir. 1991) (per curiam); Howerton v. Gabica, 708 F.2d 380, 383 (9th Cir. 1983).

A defendant has acted under color of state law where he or she has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); see also Polk Cty. v. Dodson, 454 U.S. 312, 317-18 (1981); Anderson v. Warner, 451 F.3d 1063, 1068 (9th Cir. 2006); McDade v. West, 223 F.3d 1135, 1139-40 (9th Cir. 2000); Johnson v. Knowles, 113 F.3d 1114, 1117 (9th Cir. 1997); Vang v. Xiong, 944 F.2d 476, 479 (9th Cir. 1991).  Generally, private parties are not acting under color of state law. See Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991); see also Simmons v. Sacramento Cty. Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003) (explaining that a lawyer in private practice does not act under color of state law).

Defendant Winston argues Plaintiff cannot maintain an action against him under § 1983 because Plaintiff admits Defendant Winston is a private actor.  According to Defendant Winston:

> Plaintiff admits that Winston is a private actor. See IAC, ¶¶ 70, 71. He cannot amend to allege Winston was a state actor without contradicting his earlier-filed pleadings. Moreover, Winston's conduct does not rise to the level of state action under any of the four tests to determine state action by a private actor.

ECF No. 24-1, pg. 15.

Winston concludes that Plaintiff's claim against him fails because he cannot be considered a state actor.  See id. at 15-17.

Generally, private parties are not acting under color of state law. See Price, 939 F.2d at 707-08; Simmons, 318 F.3d at 1161.  A private actor may, however, be liable for conduct that is fairly attributable to the government.  See Sutton v. Providence St Joseph Med. Ctr., 192 F.3d 826, 835 (9th Cir. 1999).  In Gonzalez v. Spencer, the Ninth Circuit explained that a private

1  attorney who is retained to represent state entities and their employees in litigation acts under

2  color of state law because his or her role is "analogous to that of a state prosecutor rather than a

3  public defender"  336 F.3d 832, 834 (9th Cir. 2003) (per curiam).

4        Additionally, where a private party conspires with state officials to deprive others

5  of constitutional rights, the private party is acting under color of state law.  See Tower v. Glover,

6  467 U.S. 914, 920 (1984); Dennis v. Sparks, 449 U.S. 24, 27-28 (1980); Crowe v. Cty. of San

7  Diego, 608 F.3d 406, 440 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002);

8  DeGrassi v. City of Glendora, 207 F.3d 636, 647 (9th Cir. 2000); George v. Pacific-CSC Work

9  Furlough, 91 F.3d 1227, 1231 (9th Cir. 1996) (per curiam); Kimes v. Stone, 84 F.3d 1121, 1126

10  (9th Cir. 1996).  "To prove a conspiracy between the state and private parties under [§] 1983, the

11  [plaintiff] must show an agreement or meeting of the minds to violate constitutional rights. To be

12  liable, each participant in the conspiracy need not know the exact details of the plan, but each

13  must at least share the common objective of the conspiracy." United Steelworkers of Am. v.

14  Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc) (citations and internal

15  quotation marks omitted); see also Crowe, 608 F.3d at 440; Franklin, 312 F.3d at 441.

16  Conclusory allegations are insufficient to state a claim of conspiracy. See Simmons, 318 F.3d at

17  1161.

18        Defendant Winston contends:

19        Though Winston is an attorney licensed by the State of California,
    he is being sued in his capacity as private counsel representing the HCSD
20    and Board Defendants. See, e.g., 1AC, ¶¶ 70-74. Winston gave advice. Id.,
    ¶¶ 70-74. Winston filed papers in at least one legal action. Id., fn.60.
21    Winston appeared in numerous legal proceedings on behalf of the HCSD
    and/or the Board Defendants. Id. Thus, Winston has been sued because of
22    the legal advice and/or services provided to the HCSD and Board
    Defendants both in relation to Board meetings and in litigation.
23
24    ECF No. 24-1, pg. 16.

25        Defendant Winston's argument is not entirely persuasive.  A private attorney who

26  is retained to provide advice to state entities may be acting under color of law.  See Gonzalez,

27  336 F.3d at 834.  Here, Defendant Winston was hired by the Hornbrook Community Services

28  District, which is akin to a state entity in that it is a public services district, to provide legal

16

1    advice.  This situation is similar to <u>Gonzalez</u>.  Because Defendant Winston was a private

2    attorney hired to represent a public entity, as in <u>Gonzalez</u>, Winston may be considered a state

3    actor.

4                          2.      *<u>Noerr-Pennington</u> Doctrine*

5                  Defendant Winston contends that, even if he can be considered a state actor, he

6    is immune from liability under the <u>Noerr-Pennington</u> doctrine.  The <u>Noerr-Pennington</u> doctrine

7    holds that "[t]hose who petition government for redress are generally immune from antitrust

8    liability." <u>Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.</u>, 508 U.S.

9    49, 56 (1993). While originally arising in antitrust law, the <u>Noerr-Pennington</u> doctrine now

10   includes all fields of law.  In <u>California Transport v. Trucking Unlimited</u>, the Supreme Court

11   stated:

12               The same philosophy governs the approach of citizens or groups of them
                 to administrative agencies (which are both creatures of the legislature, and
13               arms of the executive) and to courts, the third branch of Government.
                 Certainly, the right to petition extends to all departments of the
14               Government. The right of access to the courts is indeed but one aspect of
                 the right of petition.
15
                 404 U.S. 508, 512 (1972).
16

17                 Under the <u>Noerr-Pennington</u> doctrine, those who petition the government for

18   redress are immune from liability for their petitioning conduct. <u>See</u> <u>Empress LLC v. City &</u>

19   <u>County of San Francisco</u>, 419 F.3d 1052, 1056 (9th Cir. 2005).  Like the California anti-SLAPP

20   statute (California Code of Civil Procedure § 425.16), the <u>Noerr-Pennington</u> doctrine not only

21   protects petitioning activity, but also "activity incidental to and in anticipation of petitioning

22   activity." <u>Theme Prods., Inc. v. News Am. Mktg. FSI</u>, 546 F.3d 991, 1007 (9th Cir. 2008).

23   Communications related to litigation are sufficiently within the protection of the Petition Clause

24   to trigger the <u>Noerr-Pennington</u> doctrine to bar claims against a private attorney as to such

25   communications.  <u>See</u> <u>Freeman v. Lasky, Haas & Cohler</u>, 410 F.3d 1180, 1185 (9th Cir. 2005)

26   (applying the Noerr-Pennington and finding that plaintiffs' claims against attorneys predicated on

27   discovery misconduct, subornation of perjury, and witness intimidation were barred).

28   / / /

1            As to application of the <u>Noerr-Pennington</u> doctrine in this case, Defendant

2 Winston contends:

3                Here, Gifford's claims are based exclusively on Winston's legal
representation of his clients, HCSD and its Board members, and related

4 communicative conduct. The Complaint alleges that: Winston is an
attorney who was employed by the Board Defendants and/or HCSD at all

5 times material and was their/its agent and Winston acted "towards
Plaintiff, or with third parties, at times purportedly on behalf of the HCSD,

6 or one or more of its Directors, employees or agents." lAC, ¶¶ 71, 74 and
fn 60. Winston was the "attorney of record" for the HCSD, its employees,

7 and Board defendants, and represented them in legal actions. *Id.* Winston
authored documents, letters, emails, public records, and contracts

8 involving these clients. *Id.,* ¶¶ 71-73, fn 54. Winston presented documents
to government agencies and courts. *Id.,* ¶¶ 48, 74, fn 60. Winston provided

9 advice to the Board defendants, HCSD, and its employees. *Id.,* ¶¶ 70, 73.
The Board instructed Winston to appear in legal matters. *Id.,* ¶¶ 18, 23.

10 And Winston presented himself as counsel for the District. *Id.,* ¶¶ 70, 74,
fn. 60. There can be no dispute that Winston is being sued for conduct

11 arising out of his representation of the HCSD and its Board members.
Thus, Gifford's claims arising from Winston's representative conduct

12 constitutes protected petitioning activity under *Noerr-Pennington*. Thus,
as a matter of law, the *Noerr-Pennington* doctrine immunizes Winston and

13 mandates dismissal of Gifford's federal claims against him.

14            ECF No. 24-1, pg. 19.

15            The Court agrees.  A review of the first amended complaint reflects that

16 Plaintiff's allegations against Defendant Winston stem from Winston's actions as counsel for

17 the HCSD.  Absent the protection of the Petition Clause, attorneys like Defendant Winston

18 would not be willing to represent public entities, which would ultimately thwart the ability of

19 such entities to serve their communities.[10]  While Plaintiff may be able to establish that

20 Defendant Winston is a state actor subject to liability under §1983, Defendant Winston is

21 immune from such liability.[11]

22 / / /

23 / / /

24 / / /

25 / / /

26 _____

27     [10]    Whether the HCSD has done so in this case consistent with applicable state laws is
properly the subject of Plaintiff's various state law claim, including his claim that the HCSD
violated California's Brown Act.

28     [11]    Because Defendant Winston cannot be held liable under §1983, the Court does not
consider his substantive arguments regarding Plaintiff's various federal claims.

1              3.     Due Process

2                     Plaintiff's first amended complaint references due process in various claims, as

3      summarized below:

4              Count IV        Plaintiff alleges "Deprivation of Rights to Due Process;
                               Equal Protection."  ECF No. 17, pg. 33.  Plaintiff alleges at
5                              paragraph 96 that the Board Defendants and Kampa failed to
                               "respond in any way to Plaintiff's multiple requests to them
6                              for statutorily-mandated access to the books, papers, ad
                               records of the HCSD. . . ."  Id.  Plaintiff also states that he
7                              was denied access "without any notice or hearing to Plaintiff,
                               depriving Plaintiff off his right to due process. . . ."  Id.
8

9              Count V         According to Plaintiff, Defendants Winston, Dixon, Goff,
                               Kampa, and Dingman conspired to refuse to follow federal
10                             and state water laws.  See id.  Specifically referencing due
                               process, Plaintiff stats at paragraph 98 the Board Defendants,
11                             Dixon, Goff, Winston, Bowles, and Dingman denied him
                               "notice, opportunity to be heard, or other due legal process."
12                             Id. at 34.

13             Count VI        Plaintiff references due process and alleges the Board
                               Defendants, Bowles, Kampa, and Dingman failed to read
14                             meters and altered HCSD fees to the benefit of their friends.
                               See id. at 34.  Plaintiff states he was denied due process
15                             "insofar as he, as an elector of the District, was denied the
                               right and opportunity to be served safe water. . . ."  Id.

16             Count VII       Plaintiff contends Defendants HCBC and Crittendon denied
                               him due process by not providing notice that they were
17                             concealing their improper conduct from the public.  See id.
                               at 35.
18

19             Count VIII      Plaintiff alleges at paragraphs 101 and 102 that Defendant
                               Dingman conspired with the Board Defendants, Kampa, and
20                             Bowles to receive gifts of public funds and provided no
                               "opportunity to utilize the due processes of law. . . ."  Id.
21                             Plaintiff adds:

22                                  102     By so doing, these Defendants acted in
                                    violation of Plaintiff's due process rights to attend
23                                  their meetings and protest or take legal action
                                    concerning the illegal gifting of public funds and, to
24                                  thereby deliberately deprive Plaintiff of his right to
                                    due process, free speech, and petitioning rights to
25                                  protest and act against corrupt and unlawful activity;. .
                                    . and, his right to due process sin regards to execution
26                                  of these acts as provided by statute and the HCSD
                                    Bylaws."
27
                                    Id.
28      / / /

                                              19

1
2
3

Count XIV    In his final federal claim, Plaintiff contends the Board Defendants and Kampa violated his due process rights by refusing to comply with the "Uniform Construction Costs Accounting Act." Id. at 37.

4       The Due Process Clause protects from being deprived of life, liberty, or property

5 without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a

6 claim of deprivation of due process, a plaintiff must allege the existence of a liberty interest for

7 which the protection is sought.  See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of

8 Regents v. Roth, 408 U.S. 564, 569 (1972).  Liberty interests can arise both from the Constitution

9 and from state law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S.

10 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993).  In determining

11 whether state law confers a liberty interest, the Supreme Court has adopted an approach in which

12 the existence of a liberty interest is determined by focusing on the nature of the deprivation.  See

13 Sandin v. Connor, 515 U.S. 472, 481-84 (1995).

14       In their amended motion to dismiss, the HCSD Defendants argue: (1) Plaintiff

15 cannot state a claim for violation of procedural due process because he does not allege he was

16 denied any liberty or property interest; and (2) Plaintiff's claims based on gifts of public funds

17 fail as a matter of law because plaintiff alleges no facts to establish the disbursements were not

18 rationally related to a public purpose.  See ECF No. 26, pgs. 6-7.

19       According to the HCSD Defendants:

20
21
22
23
24

    . . . The protected interest(s) apparently alleged by Plaintiff are an ambiguous interest in flawless operation of a drinking water facility and perfectly even implementation of legal duties by public officers. Plaintiff alleges a right to "the proper and timely creation and retention of records," of which he was deprived, along with the right to have public officers "monitor and supervise the operations of the HCSD facilities and employees." (Complaint, p. 21-23.) None of these amount to the type of vested, specific . . . interest required to state a claim for relief for violation of procedural due process rights.

25       ECF No. 26, pg. 6.

26 / / /

27 / / /

28 / / /

20

As to Plaintiff's allegations relating to gifts of public funds, the HCSD Defendants argue:

> Disbursements of public funds are assumed to be legitimate so long as they are made with a public purpose, and "[d]etermination of public purpose is primarily a matter for the Legislature and will not be disturbed as long as it has a reasonable basis." *County of Alameda v. Janssen*, 16 Cal.2d 276, 281 (1940). Plaintiff has alleged no facts demonstrating that the payments lacked a public purpose, other than conclusory allegations of corruption. The essence of the facts of these allegations are that HCSD paid its employees and may have been flexible with its water rate charges. As a public agency with fewer than 200 constituents, some rate flexibility may contribute to the overall well-being of the community, and thus be rationally related to a public purpose.

ECF No. 26, pgs. 6-7.

The gravamen of Plaintiff's due process claims is that his constitutional rights were violated because the defendants concealed their allegedly wrongful conduct. The Court agrees with the HCSD Defendants that Plaintiff's various due process claims fail because Plaintiff has not alleged the existence of a recognized liberty or property interest flowing to Plaintiff as to which he was due any particular process.

### 4.   Equal Protection

Plaintiff references equal protection in various claims. In "Count IV," Plaintiff alleges "Deprivation of Rights to Due Process; Equal Protection." ECF No. 17, pg. 33. According to Plaintiff, while others were allowed to circumvent the rules to obtain benefits from the HCSD, Plaintiff was not. See id. Presumably, Plaintiff believes this constitutes a violation of the constitutional guarantee that he be treated the same as others who are similarly situated. Plaintiff also references equal protection in "Count V" under the same theory. See id. at 34. In "Count VI," Plaintiff again references equal protection under a similar theory – the allegedly nefarious conduct of various defendants resulted in some people receiving clean water while he and other citizens did not. See id. Plaintiff references equal protection in "Count VII." See id. at 34-35. According to Plaintiff, Defendants HCBC and Crittendon conspired with the HCSD, the Board Defendants, and Bowles to receive gifts and benefits to which Plaintiff and the general public were not privy. See id. at 35. In "Count VIII," Plaintiff again references equal protection under a very similar theory. See id. Plaintiff adds that a fraudulent billing practice contributed to some receiving benefits others did not. See id.

1   Finally, Plaintiff references equal protection in "Count XIV." <u>See</u> <u>id.</u> at 37.

2          Equal protection claims arise when a charge is made that similarly situated

3   individuals are treated differently without a rational relationship to a legitimate state purpose.

4   <u>See</u> <u>San Antonio School District v. Rodriguez</u>, 411 U.S. 1 (1972). Equal protection claims are

5   not necessarily limited to racial and religious discrimination. <u>See</u> <u>Lee v. City of Los Angeles</u>,

6   250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a

7   disabled plaintiff because the disabled do not constitute a suspect class) <u>see also</u> <u>Tatum v. Pliler</u>,

8   2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to a prisoner's equal protection

9   claim based on denial of in-cell meals where no allegation of race-based discrimination was

10  made); <u>Hightower v. Schwarzenegger</u>, 2007 WL 732555 (E.D. Cal. March 19, 2008).[12]

11         In order to state a § 1983 claim based on a violation of the Equal Protection

12  Clause of the Fourteenth Amendment, a plaintiff must allege that the defendants acted with

13  intentional discrimination against the plaintiff, or against a class of inmates which included the

14  plaintiff, and that such conduct did not relate to a legitimate government purpose. <u>See</u> <u>Village of</u>

15  <u>Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be

16  brought by a "class of one"); <u>Reese v. Jefferson Sch. Dist. No. 14J</u>, 208 F.3d 736, 740 (9th Cir.

17  2000); <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998); <u>Federal Deposit Ins. Corp. v.</u>

18  <u>Henderson</u>, 940 F.2d 465, 471 (9th Cir. 1991); <u>Lowe v. City of Monrovia</u>, 775 F.2d 998, 1010

19  (9th Cir. 1985).

20         In their amended motion to dismiss, the HCSD Defendants argue Plaintiff

21  cannot sustain an equal protection claim because he does not allege he is a member of a

22  protected class. <u>See</u> ECF No. 26, pg. 6. According to the HCSD Defendants:

23              Plaintiff has not alleged being a member of a protected class—
            indeed, the Equal Protection allegation is almost thrown in as an
24          afterthought. There is no allegation that any law was applied differently to
            him than to others—the equal protection claim is entirely inapplicable to
25

26

27  _____

   [12]    **Error! Main Document Only.**Strict scrutiny applies to equal protection claims
28  alleging race-based or religious discrimination (i.e., where the plaintiff is member of a "protected
   class"); minimal scrutiny applies to all other equal protection claims. <u>See</u> <u>Lee v. City of Los</u>
   <u>Angeles</u>, 250 F.3d 668, 686-67 (9th Cir. 2001).

1    the facts alleged.

2    ECF No. 26, pg. 6.

3        The Court agrees.  Plaintiff's first amended complaint is devoid of any allegations

4    that he is a member of a protected class or that any defendant acted with an intent to discriminate

5    based on membership in a protected class.  To the extent Plaintiff's equal protection claim is

6    based on his allegation that people within the jurisdiction of the HCSD are not receiving the

7    same services as others outside the district, Plaintiff's claim fails because, necessarily, he is

8    being treated the same as all those similarly situated, namely those within the jurisdiction of the

9    district.  In other words, Plaintiff is not being treated any differently than other members of the

10   public subject to the alleged wrongdoing of the HCSD Defendants.

11       5.       First Amendment

12       In his first amended complaint, Plaintiff alleges at paragraph 92 that the Board

13   Defendants, Winston, Kampa, and Dingman, acted in retaliation for Plaintiff's "exercise of

14   statutory and constitutional rights to speak freely, petition the government, and courts, for

15   redress of grievances. . . ."  ECF No. 17, pg. 32.  According to Plaintiff, Defendants' alleged

16   conduct chilled his speech.  See id.

17       In order to state a claim under 42 U.S.C. § 1983 for retaliation, the plaintiff must

18   establish that he was retaliated against for exercising a constitutional right, and that the retaliatory

19   action was not related to a legitimate government purpose.  See Barnett v. Centoni, 31 F.3d 813,

20   815-16 (9th Cir. 1994) (per curiam).  In meeting this standard, the plaintiff must demonstrate a

21   specific link between the alleged retaliation and the exercise of a constitutional right.  See Pratt v.

22   Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39

23   (9th Cir. 1989).  The plaintiff must also show that the exercise of First Amendment rights was

24   chilled, though not necessarily silenced, by the alleged retaliatory conduct.  See Resnick v. Hayes,

25   213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir.

26   2005).  Thus, the plaintiff must establish the following in order to state a claim for retaliation:

27   (1) the defendant took adverse action; (2) the adverse action was taken because the plaintiff

28   engaged in protected conduct; (3) the adverse action chilled the plaintiff's First Amendment

1   rights; and (4) the adverse action did not serve a legitimate purpose.  See Rhodes, 408 F.3d at

2   568.

3          In their amended motion to dismiss, the HCSD Defendants argue Plaintiff cannot

4   state a First Amendment retaliation claim because he suffered no adverse action after engaging

5   in protected activity.  See ECF No. 26, pgs. 5-6.  According to the HCSD Defendants:

6                  . . . Here, Plaintiff has failed to plead facts that show any sort of
           causal relationship between the vaguely referenced exercise of his right
7          to speak, to speak freely, and to petition at the public meetings of the
           board of the HCSD. (Complaint p. 20, ln. 4-13.) Plaintiff has alleged no
8          specific facts suggesting that any adverse action was taken as a result of
           his speech or petition, or that he was somehow barred from speaking or
9          petitioning. (citation omitted). To the extent that Plaintiff claims he has
           been unable to seek redress from the Courts, such a claim is patently
10         ridiculous given the multiplicity of his litigation.
                   As for the alleged infringement on Plaintiff's right to petition, it is
11         unclear how this was in any way violated. Indeed, in articulating his cause
           of action, Plaintiff enumerates the many times he exercised his right to
12         petition.

13     ECF No. 26, pgs. 5-6.

14
           The Court agrees.  As to the chilling effect of the defendants' alleged conduct,
15
    Plaintiff has pleaded facts contrary to this element.  Specifically, despite the alleged retaliation,
16
    Plaintiff has states that he has repeatedly petitioned both the HCSD and the federal courts for
17
    relief.  Further, Plaintiff has not identified the alleged adverse action taken against him, or the
18
    protected activity Plaintiff engaged in which purportedly was the impetus for such adverse
19
    action.
20
           6.      Action Directly Under the Constitution
21
           The HCSD Defendant argue that, as a matter of law, Plaintiff cannot seek
22
    redress directly under the Constitution.  See ECF No. 26, pg. 5.  According to the HCSD
23
    Defendants:
24
                   To the extent that Plaintiff seeks redress directly under the
25         constitution for violation of his First, Fourth, and Fourteenth Amendment
           rights, those claims fail because no direct cause of action exists under the
26         constitution against state defendants where such defendants are amenable
           to suit under Section 1983. Arpin v. Santa Clara Valley Transp. Agency,
27         261 F.3d 912, 925 (9th Cir. 2001) ("[A] litigant complaining of a violation
           of a constitutional right does not have a direct cause of action under the
28         United States Constitution but must utilize 42 U.S.C. 1983."); see also

                                            24

1    *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981).

2    Id.

3
     This largely "housekeeping" argument is axiomatic.  As the court noted in
4
     Arpin, § 1983 is the only vehicle available for asserting a violation of a constitutional right.
5
     See 261 F.3d at 925.  To the extent Plaintiff attempts to assert a claim directly under any
6
     particular provision of the Constitution instead of through §1983, he cannot successfully do so.
7
                    7.      Right to Vote
8
                    At paragraph 93 of the first amended complaint, Plaintiff alleges the Board
9
     Defendants and Kampa violated his right to vote.  See ECF No. 17, pgs. 32-33.  Plaintiff
10
     claims this was accomplished by Defendants' failure to abide by HCSD bylaws.  See id. at 32.
11
     More specifically, Plaintiff alleges an "agreement" to "evade the voting requirements thereof
12
     relating to District fees and charges."  Id.  Plaintiff also alleges violation of his right to vote at
13
     paragraph 99 of the first amended complaint.  See id. at 34.  Plaintiff alleges this was
14
     accomplished by "improperly and wrongfully failing to read meters, waiving various fees and
15
     charges, altering rates and fees of the HCSD to benefit their friends without voter approval."  Id.
16
     Plaintiff alleged HCSD bylaws were "contradicted" and relevant water safety laws were not
17
     followed.  Id.  Plaintiff claims that he was denied his right, "as a [sic] elector of the District," to
18
     be served with safe water.  Id.
19
                    According to the HCSD Defendants:
20
                         Gifford's complaint also alleges a violation of Plaintiff's right to
21                   vote. This violation is apparently based on unspecified violations of
                     HCSD bylaws. The gravamen of the cause of action are alleged secret
22                   meetings at which unspecified actions were taken that had an unspecified
                     effect on unspecified persons. There are no factual allegations from which
23                   to discern the actual conduct Plaintiff complains of. This cause of action
                     lacks facts sufficient to put Defendants on notice of what they are meant to
24                   have done wrong, and therefore falls short of the pleadings standards.

25                   ECF No. 26, pg. 7.

26   / / /

27   / / /

28

                                                     25

1    The Court agrees with the HCSD Defendants that Plaintiff's claims related to

2  the alleged denial of the right to vote are too nebulous and vague to proceed.  See Iqbal, 129 S.

3  Ct. at 1949.  Plaintiff has not specifically alleged how the defendants' conduct affected his right

4  to vote.  Moreover, under the Voting Rights Act of 1965, a plaintiff must allege invidious

5  discrimination.  See Mobile v. Bolden, 446 U.S. 55 (1980).  Plaintiff has failed to do so here.

6  Finally, to the extent the alleged denial of the right to vote stems from HCSD and its board

7  taking illegal or improper actions, Plaintiff has alleged no facts to indicate that he has been

8  unable to vote in any election to replace HCSD board members.

9              8.      Federal Statutory Claims

10    At paragraphs 94 and 95 of the first amended complaint, Plaintiff alleges

11  violations of the Clean Water Act and Safe Drinking Water Act.  See ECF No. 17, pg. 33.  At

12  paragraphs 103 and 104, Plaintiff specifically claims violations of these federal laws by

13  Defendant Puckett.  See id. at 35-36.  At paragraph 105, Plaintiff alleges violation of the

14  Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA).  See id. at 36.  At paragraphs

15  106 and 107, Plaintiff claims Defendant HCSD retaliated in violation of 18 U.S.C. § 1513(e).

16  See id.

17    According to the HCSD Defendants:

18              In order to bring a private claim under the Clean Water Act (and
               the other analog statutes under which Gifford brings claims), a private
19             individual must have suffered an injury in fact. See, e.g., Whitmore v.
               Arkansas, 495 U.S. 149, 155 (1990). Gifford has made no such allegation
20             here. As such, he has no standing to bring claims under these statutes, and
               those causes of action must fail as a matter of law.
21

22    ECF No. 26, pg. 7.

23    The Court agrees with the HCSD Defendants as to the Clean Water Act and

24  Safe Drinking Water Act – Plaintiff cannot sustain a claim under these statutes because he has

25  not alleged an injury in fact which he suffered.  See Whitmore, 495 U.S. at 155.  As to

26  Plaintiff's reference to FIFRA, Plaintiff's claim fails because enforcement is accomplished by

27  either the Environmental Protection Agency or the states.  See 7 U.S.C. § 136, et seq.  Plaintiff

28  has cited no authority for private enforcement of FIFRA.  Similarly, enforcement of 18 U.S.C.

26

1    § 1513(e) – relating to retaliation against an informant – is accomplished by a criminal

2    prosecution.  See 18 U.S.C. § 1513(g).  There is no private right of action under § 1513.  See

3    Shahin v Darling, 606 F. Supp. 2d 525 (D. Del. 2009).

4         **B.**    **State Law Claims**

5             In his motion to dismiss, Defendant Winston argues Plaintiff's state law claims

6    fail for the following reasons: (1) Plaintiff's claim are barred by California's litigation

7    privilege; and (2) Plaintiff's conspiracy claims are barred by California Civil Code § 1714.10.

8    See ECF No. 24-1, pgs. 21-26.  By separate motion, Defendant Winston argues the Court

9    should strike Plaintiff's state law claims under California's anti-SLAPP statute.  See ECF No.

10   25.  In their amended motion to dismiss, the HCSD Defendants argue: (1) the HCSD and its

11   employees are immune for discretionary acts under California Government Code §§ 820.2;  and

12   818.2; (2) Plaintiff has not alleged any facts to show negligence; (3) Plaintiff has not alleged

13   facts to support his nuisance claims; (4) Plaintiff has not alleged facts to support his claims

14   under California Government Code §§ 1090 and 87100; (5) Plaintiff cannot state a claim for

15   retaliation in employment; (6) Plaintiff cannot state a claim based on gifts of public funds; and

16   (7) Plaintiff's claims for negligent and intentional infliction of emotional distress fail as a

17   matter of law.  See ECF No. 26, pgs. 7-10.

18            Because, for the various reasons discussed above, the Court finds that Plaintiff

19   has failed to plead cognizable federal claims, the Court declines to rule on the viability of

20   Plaintiff's state law claims at this time.  Defendants may renew their argument relating to state

21   law claims upon a finding by the Court that Plaintiff has stated cognizable federal claims

22   which should be answered.  In the event Plaintiff is unable to state cognizable federal claims,

23   the Court will consider whether to decline supplemental jurisdiction pursuant 28 U.S.C. §

24   1367(c)(3), in which case Plaintiff may pursue his state law claims in the appropriate state

25   court of general jurisdiction.

26   / / /

27   / / /

28   / / /

1          **C.       Revocation of In Forma Pauperis Status**

2                 By way of a third motion, Defendant Winston seeks an order revoking

3    Plaintiff's in forma pauperis status, declaring Plaintiff a vexatious litigant, and requiring

4    Plaintiff to post security.  See ECF No. 39.  According to Defendant Winston, 28 U.S.C.

5    § 1915(e)(2) – part of the federal in forma pauperis statute – authorizes the Court to dismiss

6    the entire action because it is frivolous, malicious, and fails to state a claim.  See id. at 15-24.

7    Defendant Winston also contends the Court should declare Plaintiff a vexatious litigant under

8    the All Writs Act and order Plaintiff to post bond before proceeding further with this action.

9    See id. at 24-25.

10                At the outset, the Court notes that § 1915(e)(2) does not provide for revocation

11   of Plaintiff's in forma pauperis status.  In certain instances, a prisoner's in forma pauperis

12   status may be revoked under relevant provisions of the Prison Litigation Reform Act (PLRA).

13   The PLRA does not apply here, however, because Plaintiff is not a prisoner.  The provision

14   cited by Defendant Winston does permit the Court to dismiss actions filed by litigants

15   proceeding pro se if the Court finds the action is malicious, frivolous, or fails to state a claim.

16   While the Court finds that Plaintiff fails to state any federal claims, the Court declines to rule

17   on Plaintiff's state law claims, leaving that task for another day if Plaintiff can state cognizable

18   federal claims.  The procedural relief requested by Defendant Winston in his third motion

19   should, therefore, be denied at this time without prejudice.  Defendant Winston may renew his

20   request to declare Plaintiff a vexatious litigant and require him to post security should the case

21   proceed in federal court past the pleadings stage.

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

## V.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1.      Defendant Winston's motion to dismiss, ECF No. 24, be granted as to Plaintiff's federal claims and Defendant Winston be dismissed with prejudice;

2.      The HCSD Defendants' amended motion to dismiss, ECF No. 26, be granted as to Plaintiff's federal claims;

3.      Plaintiff's federal claims be dismissed as follows;

        a.      Plaintiff's due process claims be dismissed with leave to amend;

        b.      Plaintiff's equal protection claims be dismissed with leave to amend;

        c.      Plaintiff's retaliation claim be dismissed with leave to amend;

        d.      Plaintiff's claims relating to the denial of the right to vote be dismissed with leave to amend;

        e.      Plaintiff's federal statutory claims be dismissed with prejudice;

4.      Defendants' motions to dismiss be denied as to Plaintiff's state law claims, without prejudice to renewal upon the filing of a further amended complaint; and

5.      Defendant Winston's motion to strike Plaintiff's state law claims, ECF No. 25, and motion to revoke Plaintiff's in forma pauperis status, declare Plaintiff a vexatious litigant, and require Plaintiff to post security, ECF No. 39, also be denied without prejudice to renewal upon the filing of a further amended complaint; and

6.      Plaintiff's motions for default judgment, ECF Nos. 65 and 66, be denied because Plaintiff has not demonstrated an entitlement to relief on any of his federal claims and the Court has not decided whether to exercise supplemental jurisdiction over Plaintiff's state law claims.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.

/ / /

1   Failure to file objections within the specified time may waive the right to appeal.  See <u>Martinez v.

2   Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3

4   Dated:  March 25, 2021

5                                    DENNIS M. COTA

6                                    UNITED STATES MAGISTRATE JUDGE