1
2
3
4
5
6
7
8               **IN THE UNITED STATES DISTRICT COURT**
9               **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10

11    ROGER GIFFORD,                         No.  2:17-CV-2421-TLN-DMC

12                  Plaintiff,

13         v.                                FINDINGS AND RECOMMENDATIONS

14    PETER KAMPA, et al.,

15                  Defendants.

16

17          Plaintiff, who is proceeding pro se, brings this civil action.[1]  Pending before the

18    Court is Defendants' motion to dismiss, ECF No. 86.  The matter has been submitted on the

19    record without oral argument.

20          In considering a motion to dismiss, the Court must accept all allegations of

21    material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The

22    Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer

23    v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S.

24    738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

25    ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen,

26    395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual

27

28          [1]     This case is related to Gibbs v. Hanson, et al., 2:21-cv-0119-TLN-DMC.  See ECF
      No. 70 (related-case order).

                                          1

1    factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

2    In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

3    See Haines v. Kerner, 404 U.S. 519, 520 (1972).

4            Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

5    of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair

6    notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly,

7    550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order

8    to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain

9    more than "a formulaic recitation of the elements of a cause of action;" it must contain factual

10   allegations sufficient "to raise a right to relief above the speculative level."  Id. at 555-56.  The

11   complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Id.  at

12   570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

13   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

14   Iqbal, 129 S.Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but

15   it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting

16   Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a

17   defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement

18   to relief."  Id. (quoting Twombly, 550 U.S. at 557).

19           In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials

20   outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

21   Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1)

22   documents whose contents are alleged in or attached to the complaint and whose authenticity no

23   party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,

24   and upon which the complaint necessarily relies, but which are not attached to the complaint, see

25   Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

26   of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

27   1994).

28   / / /

2

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects."  Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## I.  BACKGROUND

### A.  First Amended Complaint

This matter was previously before the Court on various motions challenging Plaintiff's first amended complaint.  In the first amended complaint, Plaintiff named the following as defendants:

> Peter Kampa
>
> Robert Puckett, Sr.
>
> Patricia Slote
>
> Melissa Tulledo
>
> Robert Winston
>
> Julie Bowles
>
> Clint Dingman
>
> Ernest Goff
>
> Kevin Dixon
>
> The Hornbrook Community Services District (HCSD)
>
> The Hornbrook Community Bible Church (HCBC)
>
> Steven Crittenden
>
> Duke Martin
>
> James Soares
>
> See ECF No. 17.

Defaults were entered as to Defendants Slote, Dixon, HCBC, Crittenden, Martin, and Soares on May 23, 2019, see ECF Nos. 29, 30, 31, 32, 33, and 34 (Clerk's entries of default), and Plaintiff's motions for default judgment have been denied, see ECF No 82 (District Judge order adopting findings and recommendations).  Defendant Winston has been

1    dismissed.  See ECF No. 82.

2          On March 25, 2021, the Court issued findings and recommendations

3    recommending that Plaintiff's first amended complaint be dismissed with further leave to

4    amend as to some claims and with prejudice as to other.  See ECF No. 71.  The Court noted:

5                . . .Plaintiff alleges his claims arise under the First,
            Fourth, and Fourteenth Amendments to the United States Constitution,
6            as well as various federal statutes, including the Clean Water Act and the
            Safe Drinking Water Act.  See id. [ECF No. 17] at 1.  Plaintiff also
7            alleges various state law claims.  See id.

8                                    * * *

9                Plaintiff collectively refers to Defendants Puckett,
            Tulledo, and Slote, who are alleged to be former members of the board
10           of directors of Defendant HCSD, as the "Board Defendants."  Id. at 3.
            Plaintiff collectively refers to Defendants Bowles, Dingman, Winston,
11           Goff, Kampa, and Dixon, who are alleged to be employees and/or
            contractors of Defendant HCSD, as the "employee and contractor
12           Defendants."  ECF No. 17, pg. 3.  According to Plaintiff: "The 'Board
            Defendants' took wrongful actions in their official capacities as public
13           officials and officers, and/or under color of law of their positions, and
            also failed to properly supervise, train, and/or control, the HCSD
14           employee and contractor Defendants. . . ."  Id.

15           ECF No. 71, pgs. 2-3.

16          The Court further noted that the first amended complaint contained no specific

17   allegations as to Defendant Tulledo, who Plaintiff alleged to be among the Board Defendants.

18   See id. at 3.  As to those individual defendants against whom defaults were not entered and

19   who have not been dismissed, the Court outlined Plaintiff's specific allegations as follows:[2]

20                      Defendant Robert Puckett, Sr.

21               Plaintiff alleges Defendant Puckett was the president of
            the HCSD board and initiated the "common plan" which was ratified by
22           Defendants Tulledo, Winston, Kampa, Dingman, Goff, and Dixon.  ECF
            No. 17, pg. 6.  According to Plaintiff, this "common plan" was adopted
23           to allow for operation of the HCSD in an "unsafe manner which failed to
            comply with Federal, State, and Local laws; and to create, institute, and
24           enforce policies, customs, and practices, all in violation of Federal, State,
            and local laws. . . ."  Id.
25

26           [2]        Because Defendant HCSD can only have acted through its officers and directors,
     allegations against whom are outlined herein, the Court does not include a summary of Plaintiff's
27   allegations against HCSD.  The Court focuses on Plaintiff's allegations against the non-defaulting
     individual defendants who remain in the action – Puckett, Bowles, Dingman, Goff, and Kampa.
28   The Court provides this detailed summary of Plaintiff's prior pleading to allow for comparison
     with the current operative pleading.

                                        4

Plaintiff claims Defendant Puckett's conduct resulted in undercharging and waiving fees and charges for certain customers, failing to impose and collect the "standby fee" as to each parcel, and failing to comply with provisions of the California Water Code.  Id. Plaintiff also claims Defendant Puckett conspired with Defendant Winston to "approve Winston's intervention in several HCSD administrative matters, and/or Siskiyou County Superior Court matters being prosecuted by Plaintiff and other persons, as well as matters in the Third District Court of Appeals, without any BOD [board of directors] approval prior to Winston's appearing therein." Id. at 6-7.  Plaintiff alleges these appearances violated provisions of the California Business and Professions Code.  See id. at 7.

Plaintiff alleges the "Board Defendants, Kampa, Dingman, Goff, Dixon, and Winston" acted to allow defendant Dingman to "work on, and operate (including by the addition of chemicals to the water supply) the HCSD water production, treatment, and distribution facilities without any certification, or license to do so," in violation of provisions of the California Health and Safety Code.  ECF No. 17, pg. 7. Plaintiff adds:

> . . .These same Defendants agreed, conspired, and acted to allow Dingman to occupy and utilize for his personal purposes, the water production, treatment facilities, and real property of the HCSD free of charge, and without compensation for the costs incurred to the HCSD and the public by his doing so."

> Id.

Plaintiff further claims the Board Defendants conspired with Defendant Winston to "wrongfully and corruptly have the HCSD divert public funds to Winston for former Board member Michelle Hanson's private legal fees in Siskiyou County Superior Court cases. . . ." Id.

Finally, Plaintiff outlines a number of allegations of further wrongdoing on the part of Defendant Puckett, including:  an unpermitted and improperly altered septic system; derelict vehicles leaking toxic oils and fluids onto the ground and public streets, rivers, and creeks; decrepit sheds, lean-tos, outbuildings, trailers, fifth wheels, "and the like in a manner harboring rodents and vermin"; improperly stored pesticides, rodenticides, and fungicides in trailers in which Defendant Puckett permits people to live; maintaining a fire hazard in the form of an improperly modified residential electrical system; and maintaining large amounts of debris.  Id. at 7-8.

* * *

Defendant Julie Bowles

Plaintiff claims Defendant Bowles was an officer and employee of Defendant HCSD, serving as its treasurer.  See id. at 15. According to Plaintiff: "No agreement exists to indemnify Bowles pursuant to Govt. Code § 995 (or otherwise) in her contract with the HCSD."  Id.  Plaintiff alleges Defendant Bowles collaborated with other defendants in the "improper conduct of illegally non- and/or improperly agendized, and/or non-public meetings by improperly meeting with them

individually and serially, as a group (or portions thereof) via personal contact. . . . for the purpose of discussing official HCSD-related 'public business,' including how HCSD funds would be (improperly) diverted to Winston, Bowles, and Dingman; which HCSD customers should get (wrongfully) reduced and/or waived fees and charges and how to alter the billing to affect and conceal those reductions and waivers; and, how to submit time sheets and 'pay stubs' for Dingman that were in excess of his contracted rate of pay and hours, and/or which contained false claims for hours worked and/or jobs worked (and how to prevent all those documents, and the associated timesheets, from being revealed to Plaintiff, and the public)."  Id.  Plaintiff further claims Defendant Bowles improperly diverted public funds to friends and acquaintances.  See id.

Plaintiff alleges:

> These accts by Bowles in the operation of the HCSD
> was part of the conspiracy with the Board Defendants to
> cause disruption and upset of the operation of the HCSD, and
> of Plaintiff's position and duties as a Director and Secretary,
> and was undertaken in part as retaliation for Plaintiff's
> complaints to the HCSD Board and government agencies
> about violation of law concerning the HCSD's operations, and
> Bowles' lack of competence.

ECF No. 17, pgs. 15-16.

Finally, Plaintiff alleges Defendant Bowles submitted $2,250.00 worth of false claims for payment for services for HCSD she did not perform.  See id. at 16.

### Defendant Clint Dingman

Plaintiff alleges Defendant Dingman was the "Systems Trainee" and "Shift Operator" for defendant HCSD's water production and treatment facilities.  See id.  According to Plaintiff, Defendant Dingman lacked the certifications for this position required under state law.  See id.  Plaintiff claims the Board Defendants, Kampa, Goff, and Dixon "conspired, agreed, and acted to wrongfully provide compensation, benefits, indemnification, and/or other pecuniary and/or non-pecuniary benefits to Dingman which were not contractually specified, and/or which were granted outside of an agendized, public meeting of the Board of the   HCSD. . . ."  Id.  In particular, Plaintiff complains that other defendants allowed Defendant Dingman "to reside, with his dog, at the HCSD water plant, while also utilizing that facility for his personal purposes (including as a dog run – permitting the animal to defecate all over the property without Dingman cleaning it up), to store belongings, etc – all without any payment by Dingman for those uses."  Id.  Plaintiff further contends Defendant Dingman and other defendants conspired to arrange for Defendant Dingman to receive payments for services he did not actually perform.  See id. at 16-17.

Finally, Plaintiff alleges Defendant Dingman conspired with other defendants to carry out the "common plan."  Id. at 17.

/ / /

/ / /

6

Defendant Ernest Goff

According to Plaintiff, Defendants Goff and Dixon "represented themselves as independent contractors, as the Chief Systems Operator(s) for the HCSD, as agents of the HCSD and Board Defendants, and supervisors of Dingman." Id. at 18. Plaintiff claims that, in these capacities, Defendant Goff and Dixon "had a duty to regularly inspect, oversee, supervise, perform, and <u>directly control</u> the daily operations of the water treatment plant and distribution system as provided by Federal and Sate law. . . ." Id. (emphasis in original). Plaintiff alleges Defendants Goff and Dixon are liable to him for failing to do so. See ECF No. 17, pg. 18.

Plaintiff further claims:

> During the times material to this complaint, Goff and Dixon acted in concert with the Board Defendants, Bowles, and Dingman to extract improper payments from the HCSD, to create and distribute false public documents and reports to state enforcement agencies concerning the operation of the HCSD, to operate the HCSD in a manner contrary to law and thus causing a nuisance *per se* to Plaintiff and the public, and to wrongfully prevent inspections and oversight of the HCSD facilities. Goff and Dixon, despite their insistence as being classified "contractors" to the HCSD, also wrongfully obtained indemnification, defense, and other expenses of public money from the HCSD to which they were not entitles, and which were thus improper gifts of public funds.

> Id. at 18-19.

Plaintiff alleges that the actions of Defendants Goff and Dixon were ratified by Slote, Puckett, Kampa, and the HCSD. See id. at 19.

Defendant Peter Kampa

Plaintiff alleges Defendant Kampa was the General Manager of the HCSD and, as such, was the direct supervisor of Dingman, Goff, and Dixon. See id. at 20. According to Plaintiff, Defendant Kampa is liable because he "agreed, assisted, aided, and abetted Slote, Puckett, Goff, Dixon, Dingman, and the HCSD in the common plan to create, file with the State Water Board, and distribute, false public records, consisting of documents, logs, and reports concerning the operation of the HCSD and its facilities." Id. Plaintiff additionally claims: "At no time has Kampa actually performed any of his General Manager duties within the boundaries of the HCSD, instead simply ignoring those duties in favor of using the phone to make calls to the HCSD Board meetings as well as *ex parte communications* via phone and email to the individual Board members, Goff, Dixon, Dingman, and/or Winston in violation of the Brown Act, and to plan and/or facilitate such violations by the other Defendants." Id. at 20-21.

ECF No. 71, pgs. 3-8.

/ / /

Plaintiff alleged the facts set forth in the first amended complaint gave rise to 14 federal "counts" (collectively styled as Plaintiff's First Claim for Relief) and 25 state law "counts" (collectively styled as Plaintiff's Second Claim for Relief).  See ECF No. 17, pgs. 31-44.  In the March 25, 2021, findings and recommendations, the Court recommended that Plaintiff's federal claims be dismissed as follows:

a.    Plaintiff's due process claims be dismissed with leave to amend;

b.    Plaintiff's equal protection claims be dismissed with leave to amend;

c.    Plaintiff's retaliation claim be dismissed with leave to amend;

d.    Plaintiff's claims relating to the denial of the right to vote be dismissed with leave to amend;

e.    Plaintiff's federal statutory claims be dismissed with prejudice;

See ECF No. 71, pg. 29.

The Court further recommended that Plaintiff's claims against Defendant Winston be dismissed with prejudice.  See id.  Finally, the Court recommended that Defendants' motions to dismiss Plaintiff's state law claims be denied without prejudice to renewal at a later date should the Court determine that Plaintiff states a cognizable federal claim and elects to exercise supplemental jurisdiction over state law claims.  See id.

The District Judge adopted the March 25, 2021, findings and recommendations in full on September 23, 2021.  See ECF No. 82.  In doing so, the District Judge directed Plaintiff to file a second amended complaint within 30 days of the date of the September 23, 2021, order.  See id.

**B.    Second Amended Complaint**

On October 25, 2021, the Court granted Plaintiff an extension of time to file a second amended complaint as directed by the District Judge.  See ECF No. 84.  Plaintiff timely filed his second amended complaint on December 20, 2021.  See ECF No. 85.  As with the first amended complaint, Plaintiff continues to name the following: (1) Kampa; (2) Puckett; (3) Slote; (4) Tulledo; (5) Bowles; (6) Dingman; (7) Crittenden; (8) Martin; (9) Soares; (10) and HCSD.  See id. at 1.

1          1.      General Allegations

2                  As with the original and first amended complaints, Plaintiff alleges that the facts

3    outlined in the second amended complaint give rise to claims under the First, Fourth, and

4    Fourteenth Amendments to the United States Constitution.  See id.  He also asserts claims

5    under 42 U.S.C. §§ 1983, 1985, 1986, 1988, and 2000e.  See id.  Plaintiff asserts various state

6    law claims under this Court's supplemental jurisdiction.  See id.  Though Plaintiff's federal

7    statutory claims have been dismissed with prejudice, Plaintiff again alleges violations of the

8    Clean Water Act and the Safe Drinking Water Act.  See id. at 4.

9                  The gravamen of Plaintiff's allegations appears to be summarized in paragraph

10   11 of the second amended complaint as follows:

11                      11.     Based on their shared resentment of the lawyer fees they
                 incurred from defending against Plaintiff's actions in Court, his
12               assistance to other with their legal actions against the District (by serving
                 papers, appearing as a witness, and the like), as well as Plaintiff's
13               criticisms of their actions regarding the HCSD that Plaintiff expressed at
                 Board meetings, in emails and letters to the HCSD and its Officers, and
14               by complaints to government agencies, the Board Defendants, the
                 HCSD, and HCSD employee Defendants herein each and all stated,
15               and/or agreed with statements made by individual Board Defendants, to
                 the effect that they would exclude Plaintiff from any opportunity to
16               participate in, or bid on, and public works for the HCSD "because of the
                 lawsuits" he had filed against the HCSD, its officers, and employees.
17
18               Id. at 5-6.

19                  Plaintiff alleges Defendants acted in a "coordinated matter" to discriminate

20   against Plaintiff with respect to bidding for public contracts offered by HCSD for various jobs

21   and services.  See id. at 6.  Plaintiff also alleges that Defendants would not allow Plaintiff to

22   "hook up the property upon which he resides, nor residences for which he provides contracting

23   services, to the HCSD water system on the same terms and conditions as all of the other

24   parcels with connections to the water mains in the District. . . ."  Id.  Plaintiff concludes

25   Defendants' alleged conduct was retaliatory.  See id. at 7.

26   / / /

27   / / /

28   / / /

9

2.      Allegations as to Individual Defendants

Plaintiff then outlines his allegations as to each named defendant as follows:

a.      Puckett

In very general terms, Plaintiff alleges that Defendant Puckett "initiated the common plan" between February 15, 2017, and November 29, 2017.  See id. at 8.  According to Plaintiff, though without supporting details, Defendant Puckett's conduct was "aided, abetted, encouraged, and ratified" by other named defendants, Tulledo, Kampa, Dingman, and Goff.  See id.  Plaintiff claims this resulted in operation of the HCSD in an unsafe manner in violation of federal, state, and local laws.  See id.  Plaintiff claims without specificity that fees and charges were improperly waived for certain customers.  See id.

Next, Plaintiff alleges that Puckett conspired with other Board Defendants to approve attorney Robert Winston's "intervention in several HCSD administrative, and/or Siskiyou County Superior Court, matters being prosecuted by Plaintiff and other persons. . . ." Id.  Plaintiff claims this was done without approval of the HCSD board in violation of the Brown Act and California Government Code § 61045.  See id.

Finally, Plaintiff alleges:

> 20.      During times material to this complaint, Puckett initiated the common plan and actively solicited and obtained agreement with the other Board Defendants to wrongfully ignore and de facto deny without any hearing, Plaintiff's repeated requests to hook up property upon which he resides, and residences for which he provides contracting services, to the HCSD water system on the same terms and conditions as all of the other connections in the District.  The agreement Puckett engendered was further that Plaintiff would be denied, without any opportunity for a hearing, his right to consideration of, and to actual indemnification of, medical costs incurred by Plaintiff for injuries sustained while undertaking duties as a Director of the HCSD.  At the time Puckett undertook to create and implement this plan, and to recruit the other Defendants therein by obtaining their agreements to do so, Puckett knew that the disparate treatment against Plaintiff concerning refusal to indemnify his medical costs, and in refusing to permit him to hook up his own and others' residences to the HCSD water system, served no legitimate government purpose, and so acted arbitrarily, capriciously, and recklessly, without any concern for harms that might befall Plaintiff.  Puckett thereafter used his position as President of the HCSD to control the agendas of the Board's meetings to make sure that the objects of the agreement were achieved by assuring that Plaintiff's issues never came before the Board of Directors at any public meeting, and by refusing to allow any discussion of Plaintiff's issues when he

10

raised them himself at public meetings of the Boards.

Id. at 10.

                    b.     <u>Slote</u>

Plaintiff alleges that Defendant Slote was a member of the Board of Directors of HCSD.  <u>See id.</u>  According to Plaintiff, and in very general and unspecific terms, Slote "acted in concert with, aided, and abetted the other Defendants (and thus the HCSD), to act in concert to engage in that conduct set forth in the sections pertaining to Defendants Puckett, Tulledo, Dingman, Kampa, the HCSD, Goff, and Bowles."  <u>Id.</u>  Plaintiff states that Slote held unlawful non-public meetings of the HCSD board in violation of state law by way of "daisy chain" and/or "spoke and wheel" meetings.  <u>Id.</u>  Plaintiff claims Slote wasted public funds.  <u>See id.</u> at 11.

Next, Plaintiff alleges Slote acted without HCSD board authorization to ratify improper pay increases, hours, and payments to Defendant Dingman which were not in compliance with Dingman's contract with the district.  <u>See id.</u>  Again without detail, Plaintiff claims Slote "undertook this wrongful conduct by creating and engaging in an unofficial, non-Board-authorized 'review' of those increases of pay and hours to Dingman. . . ."  <u>Id.</u> According to Plaintiff:

                25.     These actions by Slote resulted in Dingman, during the tie material to this complaint, wrongfully being paid excessive wages, false claims for hours purportedly – but not actually – worked, and other payments that were not part of his contract for employment.  These improper payments served no legitimate or reasonable public/ governmental purpose.

        <u>Id.</u> at 12.

Plaintiff alleges that Slote's "wrongful acts" were part of an "agreement and plan between her, Puckett, Tulledo, Dingman, and Kampa, to take joint action to permit Dingman to falsely claim additional pay that he was not entitled to. . . ."  <u>Id.</u>

/ / /

/ / /

/ / /

1     Plaintiff further claims that Slote colluded with other defendants to permit and

2  encourage the unsanitary and unlawful operation of water treatment facilities.  See id. at 13.

3  Plaintiff does not say who specifically the "other defendants" were, or how they allegedly

4  colluded.

5     Finally, Plaintiff claims:

6           29.     Slote, in cooperation and agreement with the other Board
          Defendants, and Kampa, acted to wrongfully deny Plaintiff access to, or
7         inclusion on, the list of contractors for jobs relating to upkeep,
          expansion, and/or repair of the HCSD water system, and other public
8         works jobs, pursuant to provisions of the Public Contracts Code, and
          Uniform Construction Costs Accounting Act as adopted by the HCSD.
9         Slote did so because of Plaintiff's protected actions in filing legal actions
          in the Courts; because of complaints Plaintiff made to various State of
10        California agencies concerning improperly administration and operation
          of the HCSD; and because of Plaintiff's outspoken opposition to the
11        actions and conduct of the Board and HCSD employees he expressed to
          the Slote and the other Board Members at open and public meetings of
12        the HCSD Board of Directors.  Plaintiff knows this is so because Slote,
          at one public meeting, specifically stated angrily that Plaintiff would
13        "never" be allowed to do any work for the HCSD "because of all the
          lawsuits" Plaintiff has filed against the District.  When Slote made that
14        statement, the other Board Defendants present at the meeting indicated
          their agreement.
15

16     Id.

17           c.     Bowles

18     Plaintiff states that Bowles was the Bookkeeper for HCSD.  See id. at 17.  As

19  with the defendants discussed above, Plaintiff alleges Defendant Bowles "aided, abetted, and

20  assisted" the Board Defendants to hold improper non-public meetings of the HCSD.  Id.  The

21  gravamen of Plaintiff's contentions against Bowles are set forth in paragraph 42 of the second

22  amended complaint as follows:

23           42.     Bowles agreed to, collaborated with, aided, abetted, and
          assisted the Board Defendants, Goff, Dingman, and Kampa, with the
24        Board Defendants' wrongful conduct herein, and in diverting HCSD
          funds to friends and acquaintances by: failing to properly impose fees,
25        assessments [footnote omitted], and charges to certain customers
          [footnote omitted] via billing and otherwise [footnote omitted] as well as
26        altering and falsifying records concerning those customers' accounts
          (including deletion of past due amounts, penalties, fees, etc.); and,
27        willfully concealing and destroying those public records.  All of this

28  / / /

12

conduct was performed without any legitimate or reasonable public purpose.

Id. at 18.

d.    Dingman

Plaintiff alleges that Dingman was an officer, agent, and employee of the HCSD as the "purported 'Systems Trainee' and 'Shift Operator' of the HCSD water production and treatment facilities. . . ." Id. at 18.  Plaintiff claims that Dingman "failed to obtain and maintain. . . certifications required of a water treatment operator." Id.  Plaintiff also alleges that Dingman, the Board Defendants, Kampa, and Goff "conspired, agreed, and acted to wrongfully provide compensation, benefits, indemnification, and/or other pecuniary and/or non-pecuniary benefits to Dingman. . . ." Id. at 19.  Plaintiff complains that Dingman was allowed to live with his dog at the water treatment and facility.  See id.  Plaintiff adds that, as part of this conspiracy, Dingman was paid for hours he did not work.  See id.  Again, Plaintiff does not describe the details of the alleged conspiracy.

At paragraphs 49 and 50 of the second amended complaint, Plaintiff contends:

> 49.    At all times relevant herein, Dingman agreed to, assisted, aided, and abetted, Goff, Kampa, Board Defendants, and HCSD's common plan to create, file with the State Water Board, and distribute, false public records, documents, logs, and reports concerning the operation of the HCSD and its facilities.  Kampa, Dingman, and the HCSD, also wrongfully failed to create, maintain, and file with the State, various required records, testing and treatment logs, and other documents, while not actually performing the work and duties mandated by law to make the HCSD system safe and functional – all of which resulted in lack of water capacity, poor water qualify, incorrectly treated water, and water that was toxic due to Chlorine.
> 50.    Dingman's wrongful operation of the water production, treatment, and distribution facility of the HCSD [footnote omitted], in manners contrary to law, and while not having the proper Treatment Operator's Certificate from the State of California, in conspiracy with, and as directed by the Board Defendants, Kampa, and Goff, was willfully negligent, unlawful, and a nuisance *per se* [footnote omitted].

Id. at 20.

e.    Goff

Plaintiff states that Goff "represented himself" as the Chief Systems Operator for the HCSD and, as such, as Dingman's supervisor.  Id.  Plaintiff alleges that "Goff acted in

13

concert with the Board Defendants, Bowles, Kampa, and Dingman to extract improper payments from the HCSD for duties he was supposed to perform but did not. . . ."  Id.  Plaintiff further alleges that Goff operated HCSD facilities in a manner inconsistent with law, causing a nuisance.  See id.  According to Plaintiff, Goff did so "with the agreement, ratification, and assistance of Slote, Puckett, Kampa, and the HCSD. . . ."  Id. at 20-21.

The gravamen of Plaintiff's claim against Goff appears to be set forth in paragraph 57:

> 57.     Goff knowingly permitted Dingman to operate the HCSD water production, treatment, and distribution facilities in an unsafe manner, and in a way that was contrary to Federal, State [footnote omitted], and local laws.  Goff failed to actually supervise or direct Dingman during the performance of any of the tasks Dingman performed for the HCSD.  Goff failed to maintain proper logs and documentation of water use and/or the water treatment and distribution systems of the HCSD; failed to provide for an undertake testing of the "cross-connections" to the HCSD distribution system as required by law; failed to give notice to Plaintiff, the public and to the State concerning multiple occasions Dingman caused Chlorine to exceed the maximum contaminant level as set by the State of California while also assisting Dingman in hiding those events form the public and from the State Water Resources Control Board; and, knowingly permitted Dingman to conduct water treatment and distribution activities/operations at the HCSD water plant and otherwise, while Dingman did not have certifications required by the State.

Id. at 21-22.

f.     Kampa

Plaintiff states that Kampa was the General Manager of the HCSD and direct supervisor of Dingman and Goff.  See id. at 22.  According to Plaintiff, despite being responsible for the day-to-day operations of the HCSD, Kampa "simply us[ed] the phone from his residence in Southern California to make calls to HCSD Board meetings, the individual Board members, Goff, and Dingman."  Id.  As with the other individual defendants, Plaintiff alleges in general terms that Kampa "agreed with, assisted, aided, abetted, Slote, Puckett, Goff, Dingman, and the HCSD in the common plan to create, file with the State Water Board, and distribute, false public records, consisting of documents, logs, and reports concerning the operation of the HCSD and its facilities."  Id. at 22-23.  Plaintiff does not state which records were false or otherwise describe with any particularity the alleged conspiracy.  Plaintiff claims

14

1    Kampa ignored his General Manager obligations.  See id. at 23.

2           According to Plaintiff:

3                 62.    As the General Manager for the HCSD, Kampa had a
       mandatory duty imposed by law to regularly inspect, oversee, supervise,
4      and provide for the direct control by properly State-certified personnel, the
       daily operation of the water treatment plant and distribution system as
5      mandated by Federal and State laws [footnote omitted], and the HCSD
       Bylaws.  Kampa failed to perform those duties by: failing to maintain and
6      provide for the use of the "creek diversion" of the HCSD and associated
       water rights, thus jeopardizing the HCSD's diversion rights with the State
7      [footnote omitted]; failing to supervise and direct Dingman concerning the
       maintenance and safety of the water plant and surrounding area; failing to
8      require that Dingman obtain and maintain Water Treatment and/or
       Distribution Operator certifications from the State of California while
9      Dingman was operating the HCSD's facilities as was required by law;
       failing to timely and properly respond to deficiency notices by the State
10     Water Board; and, failing to timely, and/or properly (or, sometimes, at all)
       respond to CPRA requests by Plaintiff in the manner provided by law
11     concerning the public records of the HCSD's operations.  Kampa also
       charged the HCSD for supposed "General Manager" services relating to
12     these duties, but without actually providing them as promised.

13          Id.

14                g.    Crittenden

15          Plaintiff claims Crittenden is a member of the HCSD board.  See id. at 24.

16   Plaintiff alleges that Crittenden "engaged in improper, ex parte 'spoke and wheel,' 'daisy

17   chain' meetings, and other wrongful, corrupt, conduct with Puckett and Slote, and through

18   them Bowles and Dingman, in order to agree and act with them to obtain legally impermissible

19   gifts of public funds to the benefit of HCBC [Hornbrook Community Bible Church], and

20   himself, in the form of unlawfully reduced and/or waived water rates, fees, and charges."  Id.

21   Plaintiff asserts that Crittenden conspired with other defendants to obtain reduced water rates

22   for the church and the attached parsonage.  See id. at 24-25.  Once again, Plaintiff does not

23   allege any specific facts relating to a conspiracy.

24                h.    Martin

25          Plaintiff alleges that Martin is a resident of Siskiyou County, a water customer

26   of the HCSD, and owner of Crossroads Mini Storage and adjoining residential property.  See

27   id. at 25.  As with Crittenden, Plaintiff alleges that Martin conspired with other defendants to

28   obtain reduced water rates.  See id.  Plaintiff claims this amounted to a gift of public funds.

                                        15

1    <u>See</u> <u>id.</u> at 26.  Martin is not alleged to be a state actor.

2                           i.      <u>Soares</u>

3          Plaintiff alleges that Soares is a resident of Siskiyou County, an HCSD water

4    customer, and owner of at least one rental property within the boundaries of the district.  <u>See</u>

5    <u>id.</u>  As with Crittenden and Martin, Plaintiff contends that Soares conspired with other

6    defendants in order to obtain improper gifts of public funds in the form of reduced and/or

7    waived water fees.  Soared is not alleged to be a state actor.

8                  3.     <u>Legal Theories</u>

9          As in the original and first amended complaint, Plaintiff alleges various federal

10   and state law theories of relief, which Plaintiff calls "Counts."  <u>See</u> <u>id.</u> at 31-49.  In doing so,

11   Plaintiff incorporates all earlier allegations.  <u>See</u> <u>id.</u> at 31-32.  Plaintiff's federal law claims are as

12   follows:[3]

13                  Count I          Violation of right to free speech, association, and petition.

14                  Count II         Deprivation of right to due process (against HCSD, Board
                                     Defendants, Bowles, Kampa, and Dingman).
15
16                  Count III        Violation of procedural due process.

                    Count IV         Deprivation of rights to due process and equal protection.
17
                    Count V          Deprivation of right to due process (against Hornbrook
18                                   Community Bible Church and Crittenden).

19                  Count VI         Deprivation of right to due process – gifts of public funds to
                                     Dingman.
20
                    Count VII        Retaliation (against HCSD, Board Defendants, and Kampa).
21
22                  Count VIII       Violation of § 1985 (against HCSD, Board Defendants, and
                                     Kampa).
                    Count IX         Violation of § 1985 (against HCSD, Board Defendants, Kampa,
23                                   Dingman, and Bowles).

24                  Count X          Civil conspiracy to violate civil rights.

25                  <u>Id.</u> at 31-42.

26
                    Plaintiff's state law claims are as follows:[4]
27
     _____
28          [3]     Plaintiff refers to all of his federal claims as the "First Claim for Relief"
            [4]     Plaintiff refers to all of his state law claims as the "Second Claim for Relief."

| | |
|---|---|
| Count I | Violation of HCSD bylaws |
| Count II | Willful negligence; negligence. |
| Count III | Retaliation in employment (against Board Defendants, Kampa, and HCSD). |
| Count IV | Gifts of public funds. |
| Count V | Gifts of public funds (against Board Defendants); false claims and fraud (against Dingman). |
| Count VI | Gifts of public funds (against Goff and Bowles). |
| Count VII | Gifts and waste of public funds (Doe Defendants). |
| Count VIII | Violation of Article 1, section 2, of the California Constitution. |
| Count IX | Unfair business practices (against Bowles). |
| Count X | Unfair business practices (against Goff). |
| Count XI | Unfair business practices (against Kampa). |
| Count XII | Negligence. |
| Count XIII | Unfair business practices (against Hornbrook Community Bible Church). |
| Count XIX[5] | Civil conspiracy. |
| Count XX | Violation of California Public Records Act (against HCSD, Board Defendants, and Kampa). |
| Count XXI | Purported official acts of the Board Defendants are void. |
| Count XXII | Improperly unbilled fees and charges; gifts/waste of public funds. |
| Count XXIII | Gifts of public funds (against Board Defendants, Martin, Bowles, and Soares). |
| Count XXIV | Violation of the Bane Act (against HCSD, Board Defendants, and Kampa). |
| Count XXV | State law claims; exemplary damages. |

Id. at 42-49.

---

[5] The second amended complaint contains no state law "counts" XIV through XVIII.

## II.  PLAINTIFF'S LITIGATION HISTORY[6]

Roger Gifford, the plaintiff in this case, and Kimberly Olson are frequent litigants in the Eastern District of California as well as the Siskiyou County Superior Court, which has declared Olson and Gifford to be vexatious litigants primarily based on frivolous lawsuits alleging mismanagement of HSCD by its directors, officers, and others.  With respect to Plaintiff's allegations against HCSD and related defendants, the following actions are pending in the Eastern District in addition to the instant action:

> Olson v. Hornbrook Community Services District, et al.,
> 2:15-CV-0646-KJM-DMC.
>
> Olson v. Slote, et al.,
> 2:16-CV-0956-KJM-EFB.
>
> Olson v. Hornbrook Community Services District, et al.,
> 2:19-CV-2127-KJM-DMC.
>
> Gifford v. Hanson, et al.,
> 2:21-CV-0119-TLN-DMC.

Each of these actions raises claims against HCSD, its former and/or current board members, and others regarding alleged mismanagement of HCSD.  For whatever reason, the allegations in these actions are strikingly similar.  Additionally, the format, wording, phrases used, organization, and styling of claims in all of the pleadings filed by Olson and Gifford in these cases are nearly identical.  The instant action has been related to Gifford v. Hanson, et al. See ECF No. 70 (related-case order).

The related case, Gifford v. Hanson, et al., proceeds on a complaint which is nearly identical to the original complaint in the instant action.  On March 3, 2022, the undersigned issued findings and recommendations in the related case recommending that the original complaint be dismissed with leave to amend.  See ECF No. 28 in case no. 2:21-CV-0119-TLN-DMC. The matter is currently before the District Judge.

---

[6]   **Error! Main Document Only.**The Court may take judicial notice pursuant to Federal Rule of Evidence 201 of matters of public record.  See U.S. v. 14.02 Acres of Land, 530 F.3d 883, 894 (9th Cir. 2008).  Thus, this court may take judicial notice of state court records, see Kasey v. Molybdenum Corp. of America, 336 F.2d 560, 563 (9th Cir. 1964), as well as its own records, see Chandler v. U.S., 378 F.2d 906, 909 (9th Cir. 1967).  The Court's discussion in this section is based on judicially noticed state and federal court records.

1    Other active pending cases filed by Olson and Gifford are:

2        <u>Gifford v. Hornbrook Fire Protection District, et al.</u>,
3        2:16-CV-0596-DAD-DMC.

4        <u>Olson v. Bynum, et al.</u>,
     2:20-CV-2481-TLN-KJN.

5        <u>Olson v. Puckett, et al.</u>,
6        2:21-CV-1482-KJM-DMC.

7        <u>Gifford v. Dingman, et al.</u>,
     2:21-CV-1726-KJM-DMC.

8    The last two cases listed above – <u>Olson v. Puckett, et al.</u> and <u>Gifford v. Dingman,</u>

9    <u>et al.</u> – illustrate how Olson and Gifford appear to file cases in tandem.  Olson initiated her

10   lawsuit in <u>Olson v. Puckett, et al.</u> in August 2021 on allegations that HCSD and its officers and/or

11   directors improperly disconnected her water service.  <u>See</u> ECF No. 1 in case no. 2:21-CV-1482-

12   KJM-DMC.  Among Olson's allegations is the contention that a vehicle was unlawfully towed

13   from her property in order to allow for access to equipment connecting Olson's home to the

14   district's water supply.  <u>See</u> <u>id.</u>  Apparently, that vehicle belonged to Gifford, who a month later

15   filed his own lawsuit, captioned <u>Gifford v. Dingman, et al.</u>, in September 2021 on virtually

16   identical allegations as those presented in <u>Olson v. Puckett, et al.</u>  <u>See</u> ECF No. 1 in case no. 2:21-

17   CV-1726-KJM-DMC.  As with other Olson/Gifford actions, the complaints in <u>Olson v. Puckett,</u>

18   <u>et al.</u> and <u>Gifford v. Dingman, et al.</u> bear striking similarities in form, organization, phrases used,

19   and legal theories presented.[7]

20   In addition to these active pending cases, Olson and Gifford have, collectively,

21   filed nine prior actions,[8] none of which resulted in a judgment in favor of either Olson or Gifford,

22   and only one of which survived past the pleading stage.  Closed cases filed by Olson and Gifford

23   are:

24

25   [7]   Defendants have filed a motion to dismiss in <u>Olson v. Puckett, et al.</u>, which has
     been submitted on the record without oral argument and is pending.  <u>See</u> ECF No. 47 in case no.
26   2:21-CV-1482-KJM-DMC.  Defendants' response to the complaint in <u>Gifford v. Dingman, et al.</u>
     is due in September 2022.  <u>See</u> ECF No. 34 in case no. 2:21-CV-1726-KJM-DMC.
27   [8]   In another action filed by Olson, Gifford was a named defendant, apparently
     because Gifford was serving at the time in some capacity with the HCSD.  Gifford is also a
28   defendant in <u>Olson v. Hornbrook Community Services District, et al.</u>, case no. 2:15-CV-0646-
     KJM-DMC, in which Olson seeks approval of a "settlement" with Gifford.

1

Olson v. Kennard, et al.,
2:00-CV-0872-WBS-GGH.

2

Dismissed for failure to comply with court order.

3

Olson v. Lemos, et al.,
2:06-CV-1126-TLN-CMK.

4

Voluntarily dismissed at pleading stage.

5

Olson v. City of Etna, et al.,
2:08-CV-0882-FCD-EFB.

6

Voluntarily dismissed shortly after scheduling order issued.

7

Olson v. Commissioner of Social Security,
2:11-CV-2059-MCE-CMK.

8

Dismissed for failure to state a claim.

9

Gifford v. Siskiyou County Sheriff, et al.,
2:11-CV-2484-KJM-CMK,

10

Voluntarily dismissed at pleading stage.

11

Gifford v. Hornbrook Community Services District, et al.,
2:15-CV-1274-MCE-AC.

12

Dismissed for failure to state a claim.

13

Gifford v. Puckett, et al.,
2:16-CV-0955-KJM-GGH.

14

Dismissed for failure to state a claim.

15

Olson v. Rural Community Assistance Corp., et al.,
2:21-CV-0700-KJM-AC.

16

Voluntarily dismissed.

17

Olson v. Carter, et al.,
2:21-CV-0929-JAM-CKD.

18

Voluntarily dismissed at screening stage

19

20

### III.  SUMMARY OF DEFENDANTS' ARGUMENTS

21

Defendants[9] argue that Plaintiff's second amended complaint should be

22

dismissed in its entirety for failure to state a claim consistent with the pleading requirements of

23

Rule 8.  See ECF No. 86.  More specifically, Defendants contend as follows with respect to

24

Plaintiff's federal claims: (1) Plaintiff cannot bring an action directly under the United States

25

Constitution; (2) Plaintiff cannot state a claim for violation of his First Amendment rights; (3)

26

Plaintiff cannot establish a claim for violation of procedural due process; (4) Plaintiff cannot

27

28

[9]     Moving defendants are:  HCSD, Kampa, Puckett, Tulledo, Bowles, Dingman, Slote, Dixon, and Goff.

1  establish any equal protection claims; (5) Plaintiff's claims based on alleged gifts of public

2  funds fail because Plaintiff presents no facts establishing that the disbursements of funds were

3  not rationally related to a public purpose; and (6) Plaintiff has not pleaded any facts to

4  establish a violation of his right to vote.  See id. at 5-8.  Defendants also argue that Plaintiff

5  cannot maintain any federal statutory claims.  See id. at 8.  The Court, however, does not

6  consider this argument because the District Judge has dismissed Plaintiff's federal statutory

7  claims with prejudice.  See ECF No. 82.

8          As to Plaintiff's state law claims, Defendants argue: (1) HCSD and its

9  employees are immune under California Government Code § 820.2; (2) Plaintiff has pleaded no

10  facts suggesting Defendants were negligent; (3) Plaintiff has pleaded no facts to support a claim

11  for nuisance against HCSD, the Board Defendants, Dingman, or Goff; (4) Plaintiff's state law

12  claims for retaliation in employment fail because Plaintiff was not an HCSD employee; and

13  (5) Plaintiff's state law claims based on alleged gifts of public funds fail as a matter of law.  See

14  ECF No. 86, pgs. 8-10.

15                              **IV.  DISCUSSION**

16          The Court finds Plaintiff's non-compliance with Federal Rule of Civil

17  Procedure 8's pleading standards to be dispositive of the pending motion to dismiss.

18          Rule 8's pleading requirements are not met by a "complaint that contains

19  conclusion or surmise and requires a court to decide whether events not pleaded could be

20  imagined in a plaintiff's favor."  Levin v. Miller, 763 F.3d 667, 671 (7th Cir. 2014).  Rather, in

21  order to establish plausibility, allegations in a complaint "may not simply recite the elements of a

22  cause of action but must contain sufficient allegations of underlying facts to give fair notice and

23  to enable the opposing party to defend itself effectively."  Eclectic Props. E., LLC v. Marcus and

24  Millichap Co., 751 F.3d 990, 996 (9th Cir. 2014 (internal quotation and citation omitted).

25  ". . .[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief,

26  such that it is not unfair to require the opposing party to be subjected to the expense of discovery

27  and continued litigation."  Id.  While pleadings of pro se litigants are held to less rigid standards

28  than those drafted by attorneys, see Haines v. Kerner, 404 U.S. 519, 520-522 (1972), even pro se

1  pleadings "must meet some minimum threshold in providing a defendant with notice of what it is

2  that it allegedly did wrong," <u>Brazil v. United States Dept. of Navy</u>, 66 F.3d 193, 199 (9th Cir.

3  1995).

4          Although the Federal Rules adopt a flexible pleading policy, a complaint must give

5  fair notice and state the elements of the claim plainly and succinctly. <u>See</u> <u>Jones v. Community</u>

6  <u>Redev. Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984). Plaintiff must allege with at least some degree

7  of particularity overt acts which defendants engaged in that support Plaintiff's claim. <u>See</u> <u>id.</u> The

8  allegations must be short and plain, simple and direct, and describe the relief Plaintiff seeks. <u>See</u>

9  Fed. R. Civ. P. 8(a); <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 (2002); <u>Galbraith v.</u>

10  <u>County of Santa Clara</u>, 307 F.3d 1119, 1125 (9th Cir. 2002).

11          In <u>Olson v. Slote, et al.</u>, which proceeds on an amended complaint against HCSD

12  and others that is almost identical to the amended complaint currently before the Court in the

13  instant action, Judge Brennan observed as follows in recommending Plaintiff's first amended

14  complaint be dismissed without further leave to amend:

15          As explained below, the first amended complaint suffers from the
16          same deficiencies as plaintiff's original complaint, and it too must be
            dismissed for failure to state a claim.

17                                    * * *

18          Plaintiff's first amended complaint asserts claims under 42 U.S.C.
19          §§ 1983, 1985, 1986; 1988; Title II of the Americans with Disabilities Act
            ("ADA"), 42 U.S.C. §§ 12131, *et seq*., the Safe Drinking Water Act, 42
20          U.S.C. §§ 300f *et seq*.; the Clean Water Act, 33 U.S.C. §§ 1251 *et seq*.; 18
            U.S.C. § 1513, as well as more than 20 state law claims. ECF No. 7. The
21          claims are brought against 16 defendants, including the Hornbook
            Community Services District ("HCSD") and its directors, agents, and
22          customers; the Hornbook Community Bible Church and its employees;
            Basic Labs; and the law firm of Kirsher, Winston & Boston. *Id*. The crux
23          of the amended complaint is that defendants participated in grand a
            conspiracy to mismanage HCSD.
24          Like her earlier complaint, plaintiff's amended complaint fails to
            comply with Rule 8. Rather than providing a short and plain statement for
25          each of plaintiff's claims, the 58-page amended complaint consists largely
            of vague and conclusory allegations concerning various events that
26          allegedly occurred from 2004 through 2017. Further muddling the matter,
            numerous allegations in the amended complaint that appear unrelated, or
27          only tangentially related, to plaintiff's dispute with the defendants' alleged
            mismanagement of HCSD. *See, e.g., id*. ¶¶ 15, 18 (alleging HCSD
28          directors permitted defendant Dingman and his dog to occupy a water

treatment facility for personal use and storage); ¶ 17 (alleging that
defendant Puckett stored hazardous material on his property).

As drafted, it is nearly impossible to discern the specific claims
plaintiff intends to allege against each of the 17 named defendants, as well
as the particular facts supporting each claim. Plaintiff purports to assert 17
federal causes of action, many setting forth multiple claims within the
same cause of action. For instance, plaintiff's 17th "count" is entitled
"Violation of Fourth Amendment." *Id*. at 42. But the allegations provided
in connection with that cause of action do not implicate the Fourth
Amendment. Instead, the single paragraph supporting that claim alleges
defendants violated California's Brown Act, Cal. Gov't Code §§ 54950, *et
seq.* and plaintiff's right to due process by holding "non-agendized"
HCSD board meetings that included segments that were not open to the
public. [footnote omitted]. *Id*. ¶ 127. Further, each of plaintiff's claims
confusingly seek to incorporate by reference various sections of the
complaint. Indeed, the amended complaint includes a section entitled
"Incorporation of Factual Allegations into Counts," under which plaintiff
explains that she seeks to incorporate earlier sections of the complaint into
her claims. *Id*. at 7. As previously explained to plaintiff, proceeding in this
fashion renders it impossible for the court and defendants to ascertain the
factual basis for each particular claim.

* * *

But even if the court were able to ascertain plaintiff's claims, as
well as the specific allegations purporting to support each claim, dismissal
would still be warranted. Despite spanning 58 pages, the amended
complaint is nearly devoid of specific factual allegation. Instead, it is
replete with redundant legal statements and vague and conclusory
allegations that fail to support a cognizable legal claim. *See, e.g.*, *id*. ¶ 105
(alleging defendants, "in acting as set forth above in manners adverse to
Plaintiff, did so willfully, with intent to interfere with, impede, coerce
Plaintiff into abandoning, and in retaliation for, her excise of statutory and
constitution rights to speak freely, petition the government, and courts, for
redress of grievances; and her attempt to assert the right to vote . . . [,]
violated Plaintiff's First Amendment rights to assemble with the other
electors . . . ."), ¶ 113 ("Defendants HCSD and Board Defendants
improperly conspired with, were unduly influenced, and engaged in
corrupt activity with Defendants HCBC, Crittenden, and Bowels, in order
to utilize the Board Defendants authority under color of State law, for the
HCBC and Crittenden to wrongfully receive gifts of public funds . . . .").

ECF No. 8, pgs. 2-4, in case no. 2:16-CV-0956-KJM-EFB.[10]

The undersigned includes Judge Brennan's analysis here for two reasons.  First, it
demonstrates the close similarity among the various pending Olson and Gifford actions alleging
mismanagement of HCSD pursuant to some kind of grand scheme.  Second, Judge Brennan's
analysis applies plainly and point by point to the instant action, again because the complaints filed

---

[10]     Judge Brennan's findings and recommendations were issued on September 25,
2020.  Olson filed objections on October 2, 2020, and the matter is pending before the District
Judge.

1    by Olson and Gifford are so similar, as discussed below.

2           As in <u>Olson v. Slote, et al.</u>, Plaintiff's complaint here, which is 53 pages long (and

3    seven pages longer than the first amended complaint), is largely written in vague and conclusory

4    legal terms, such as "aided and abetted," which are repeated throughout and which concern wide

5    range of events occurring throughout 2017.  Also mirroring <u>Olson v. Slote, et al.</u>, the complaint

6    here contains a number of tangential and seemingly unrelated allegations.  In <u>Olson v. Slote, et</u>

7    <u>al.</u>, Plaintiff alleges in the instant case that Dingman was improperly permitted to live on district

8    property with his dog.  <u>See</u> ECF No. 85, pg. 19.  Gifford makes the exact same claim in <u>Gifford v.</u>

9    <u>Kampa, et al.</u>, <u>see</u> ECF No. 85, pg. 19, in case no. 2:17-CV-2421-TLN-DMC (Gifford's second

10   amended complaint), and Olson makes the exact same claim in <u>Olson v. Hornbrook Community</u>

11   <u>Services istrict, et al.</u>, <u>see</u> ECF No. 1., pg. 16, case no. 2:19-CV-2127-KJM-DMC.

12          The precise fit of Judge Brennan's analysis in <u>Olson v. Slote, et al.</u> to this case is

13   further illustrated in the context of the number of claims raised and the way they are presented.

14   Here, Plaintiff raises 10 federal claims (some having already been dismissed), many with various

15   sub-claims, and 20 state law claims, also with sub-claims.  And as in <u>Olson v. Slote, et al.</u>,

16   Plaintiff here attempts to incorporate other sections of her pleading by reference into the various

17   federal and state law claims.  The undersigned agrees with Judge Brennan's conclusion that

18   "proceeding in this fashion renders it impossible for the court and defendants to ascertain the

19   factual basis for each particular claim." ECF No. 8, pg. 3, in case no. 2:16-CV-0956-KJM-EFB.

20          Plaintiff's complaint here is bereft of specific factual allegations explaining who

21   did what, when, how, and why.  Nor does the complaint here link any specific facts to specific

22   defendants and the specific elements of the legal theories asserted.  Even allowing a wide range of

23   latitude because Plaintiff is proceeding pro se, the Court simply cannot find that Plaintiff's

24   complaint complies with Rule 8 such that Defendants have received fair notice sufficient to

25   answer.

26          Plaintiff's failure to comply with Rule 8 alone justifies dismissal of her complaint.

27   <u>See</u> <u>Schmidt v. Hermann</u>, 614 F.2d 1221, 1223 (9th Cir. 1980) (upholding the dismissal of a

28   complaint where it was "impossible to designate the cause of action or causes of action attempted

1  to be alleged in the complaint."); In re Sagent Tech., Inc., 278 F.Supp.2d 1079, 1094 (N.D. Cal.

2  2003) ("[T]he complaint fails to state a claim because plaintiffs do not indicate which individual

3  defendant or defendants were responsible for which alleged wrongful act."); see also McHenry v.

4  Renne, 84 F.3d 1172, 1177-78 (9th Cir. 1996) (affirming Rule 8 dismissal of complaint that was

5  "argumentative, prolix, replete with redundancy, and largely irrelevant" and providing an

6  example of a properly pleaded claim, which could be "read in seconds and answered in minutes").

7          The Court has previously advised Plaintiff of the defects in his pleading and

8  provided Plaintiff an opportunity to amend.  As outlined in detail above, Plaintiff's allegations

9  have not materially changed in such a way as would provide the defendants faire notice.  In short,

10  the Rule 8 violation persists.  The undersigned recommends that Plaintiff's second amended

11  complaint be dismissed without further leave to amend.

12

13                          **V.  CONCLUSION**

14          Based on the foregoing, the undersigned recommends that Defendants' motion to

15  dismiss, ECF No. 86, be granted and that this action be dismissed in its entirety with prejudice for

16  failure to state a claim upon which relief can be granted.

17          These findings and recommendations are submitted to the United States District

18  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

19  after being served with these findings and recommendations, any party may file written objections

20  with the Court.  Responses to objections shall be filed within 14 days after service of objections.

21  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v.

22  Ylst, 951 F.2d 1153 (9th Cir. 1991).

23

24  Dated:  August 30, 2022

25                                          _____
                                            DENNIS M. COTA
26                                          UNITED STATES MAGISTRATE JUDGE

27

28

                                    25